[No. 9,505.   Department Two.—September 30, 1884]

# RECLAMATION DISTRICT NO. 3, APPELLANT, CHARLES GOLDMAN, RESPONDENT.

SWAMP LANDS—RECLAMATION ASSESSMENT—PLEADING—LAW OF THE CASE.—
In an action to enforce an assessment for the reclamation of swamp lands, a
judgment in favor of the defendant on a general demurrer to the complaint was
appealed from and reversed. On a second appeal, it was objected by the defend-
ant that the action should have been brought in the name of the people, and not
in the name of the reclamation district. *Held*, that the previous decision had
become the law of the case on this point, and that the objection could not be
sustained.

ID.—RE-ORGANIZATION OF RECLAMATION DISTRICT—CALLING MEETING OF LAND
OWNERS—SWAMP LAND CLERK.—A meeting of land owners for the purpose of
re-organizing, under the Act of the 28th of March, 1868, a reclamation district
previously formed, was called by a notice signed by the swamp land clerk, an
officer created by that act. *Held*, that the meeting was properly called.

ID.—ENFORCING RECLAMATION ASSESSMENT—CONSTITUTIONAL LAW.—Where a
reclamation assessment can only be enforced by suit, in which notice must be
given to the defendant, and an opportunity afforded him to be heard in respect
to the assessment without restriction as to the defenses he may interpose, the
constitutional provision as to due process of law is not violated.

ID.—VALIDITY OF ASSESSMENT—LAND OMITTED THEREFROM.—It was competent
for the commissioners under the Act of 1868, to omit from the assessment land
within the boundary of the district which would not be benefited by the
reclamation.

ID.—APPROVED PLANS—DEVIATION.—The Act of 1868 did not require a strict
compliance with the approved plans in doing the work. Some discretion was
vested in the trustees, and a trifling deviation from the plans, or a deviation
beneficial in its character, will not vitiate the proceedings.

ID.—FORMATION OF DISTRICT—APPROVAL BY BOARD OF SUPERVISORS.—In
re-organizing a reclamation district under the Act of 1868, the approval of the
board of supervisors was not required.

ID.—ADDITIONAL ASSESSMENT.—The reclamation district being situated wholly
in Sacramento County, *held*, that the estimates for an additional assessment as
authorized by the Act of 1868 were properly presented to the board of
supervisors of that county.

APPEAL from a judgment of the Superior Court of the county
of Sacramento, and from an order refusing a new trial.

The deviation from the approved plans referred to in the
opinion of the court, consisted in the exclusion from the land to
be reclaimed of a narrow strip of about one hundred acres,
which had been included in the approved plans. The other
facts are stated in the opinion.

*J. F. Carey*, for Appellant.

*A. P. Catlin*, and *McKune & George*, for Respondent.

THORNTON,. J.—This action was instituted to foreclose the alleged lien of a delinquent assessment upon lands within a reclamation district, situate in Sacramento County: The district existed before, but was re-organized under the Act of March 28, 1868, "to provide for the management and sale of the lands of the State." (Stats. 1867–68, p. 507.)

It is urged here on behalf of respondent that the judgment should be affirmed, for the reason that the action is wrongly brought, that it is brought in the name of the district when it should have been brought in the name of the people. But when this cause was here before (61 Cal. 205), on appeal from the judgment, which had passed in favor of defendant by reason of a demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, having been sustained by the court below, this court reversed the judgment, thus holding that the complaint was sufficient in its statement of facts. That the question here made is within the scope of the demurrer heretofore passed on is held in *People* v. *Haggin,* 57 Cal. 387. If we were to hold on this appeal that the action was not properly brought, we would be practically overruling the decision on the former appeal. We would be holding now that the complaint did not state facts sufficient to constitute a cause of action, whereas we held then that the complaint, which is identical with the one before us on the former appeal, did state facts sufficient to constitute a cause of action. This we cannot do under repeated decisions of this court. The former decision becomes the law of the case. (See *Clary* v. *Hoagland,* 6 Cal. 685; *Davidson* v. *Dallas,* 15 Cal. 75; *Mulford* v. *Estudillo,* 32 Cal. 131; *Jaffe* v. *Skae,* 48 Cal. 540; *Donner* v. *Palmer,* 51 Cal. 636.) The same facts, so far as they relate to the question we are considering, are before us now as on the former appeal, and the judgment then rendered must constitute the law of the case in all its stages. (See cases above cited.) In view of this rule, which we regard as well settled in this State, we must hold that the question, whether the action is properly brought in the name of the reclamation district, is no longer open for decision.

The plaintiff was organized in 1861 under the laws then existing. In 1871 it took steps to re-organize under section 43 of the Act of 1868, above referred to. (Stats. 1867–68, pp. 507–

519.)   It appears from the bill of exceptions that the plaintiff on the trial introduced in evidence the original record of the proceedings of the land owners of District No. 3, organizing the district in conformity with the provisions of section 43 above cited.   But the meeting for the purpose of organization was called by Grove L. Johnson, who was at that time swamp land clerk for the board of supervisors of Sacramento County, in which county the district is situated.   The statute (see § 43, above cited) requires that such meeting shall be called by the clerk of the board of supervisors.   At the time these proceedings were had, to wit, in May, 1871, the county clerk was then *ex-officio* clerk of the board of supervisors.   It is urged that the organization of the plaintiff into a reclamation district is void, and it can maintain no action, for the reason that the meeting for such organization was not called by the officer designated by the statute, it having been called by the swamp land clerk.

But we are of the opinion that the proviso to section 46 of the Act of 1868 makes the swamp land clerk the clerk of the board of supervisors for the purpose of calling such meeting. By that proviso the board is empowered to employ a clerk to attend to matters pertaining to swamp lands, and among such matters, in our view, is that of calling a meeting of the land-owners concerned in the business of organizing under the Act of 1868.

The point that the due process of law guaranteed to the defendant, and secured by the fourteenth amendment of the Constitution of the United States, is violated in the assessment of defendant's property, is disposed of adversely to the contention of defendant by *Hager* v. *Reclamation District No.* 108, 111 U. S. Rep. 701–711.   The case just cited, like the one under consideration, was brought to enforce the alleged lien of an assessment made on lands within a reclamation district, formed under the Act of 1868.   The court held that such an assessment, according to the laws of this State, could be enforced only by suit against the tax payer, in which notice must be given to the defendant, and an opportunity afforded him to be heard respecting the assessment, and that in such suit the tax payer may set forth, by way of defense, all his grievances.

Where this opportunity to be heard respecting the assessment

is afforded to the tax payer in an action, there has been given
him all that the guarantee of due process of law requires and
secures, and he has nothing to complain of in regard of such
process. (See *Reclamation District No.* 108 v. *Evans,* 61 Cal.
104.) We are of opinion that there is no violation of the Con-
stitution of the United States in the proceedings concerning the
assessment involved in this case, and that it must be so ruled.

This court is of opinion that the finding of the court below
that no statement, as required by the amended section 34 of the
Act of 1868 (see Stats. 1871–72, p. 668), was ever presented by
the board of trustees of the district to the board of supervisors
of Sacramento County is not sustained by the evidence. It
seems from the testimony of Sheehan, who was one of the
trustees, that he, by authority of the board of trustees, and
under its direction, furnished all the data to their attorney,
Grove L. Johnson, who prepared the statement under the
direction of Sheehan, and presented it on behalf of the board of
trustees to the board of supervisors. The statement had to it
the name of T. W. Sheehan, and appended to his name is the word
"secretary." If the name of Sheehan was not signed to this
statement in his own handwriting, it was done by Johnson by
his authority. Sheehan testifies that the figures as inserted in
it were such as he was authorized by the board of trustees at its
meeting, on the 10th day of July, 1876, to insert, as well as the
other things which appear in it. His testimony substantially
amounts to this : That the contents of the statement were
agreed on by the board of trustees at its meeting, to be reported
to the board of supervisors in a statement, and he was author-
ized to have the statement prepared accordingly, and presented
to the board. There was no testimony to the contrary. It is
said that the minutes of the meeting of July 10th are contrary
to this, for the reason that more appears in the statement than
in the minutes. We do not concur in this conclusion. Sheehan
explains this in his testimony. He testified that the report
made to the board of supervisors was based on estimates made
by the board of trustees before he left the district. We think
it satisfactorily appears from the testimony of the witness that,
if any amounts are inserted in the statement which do not
appear in the minutes, they were there inserted at the oral

direction of the board of trustees. We can see no reasonable objection to this. The law does not require that the board shall keep any minutes or record of its proceedings. It is only required (§ 36, Act 1868) to keep accurate accounts of all expenditures. If the law did require it to keep such record, what was done by the board at its meeting and not inserted in the record might be established by oral evidence.

The defendant (respondent here) contends that the Act of 1868 (§ 33) requires the board of trustees to report to the board of supervisors the plans of the work made by the engineer employed by it (§ 32); that no such plans were reported. But inasmuch as this is found adversely to the contention of respondent, and he is not the appellant, we are of opinion that the point is not before us for decision on this appeal.

The commissioners on making the assessment of the cost of reclamation inserted in its assessment list a tract of land belonging to one McIntyre, by a proper description, in the same way as it inserted tracts of land belonging to other persons. A portion of that list is inserted in the bill of exceptions to show the manner in which this tract and other tracts were dealt with by the commissioners:—

## EXHIBIT A.

ASSESSMENT LIST FOR RECLAMATION PURPOSES UPON THE LANDS WITHIN SWAMP LAND DISTRICT NO. 3, SACRAMENTO COUNTY, CALIFORNIA.

| Names of the owners of each tract assessed. | Description of each tract assessed | No. of acres in each tract | Amount of the charge assessed against each tract | | Remarks. |
|---|---|---|---|---|---|
| | | | Dols. | Cts. | |
| Clarke, C. W., | All of Swamp Land Survey No. 301 not embraced in the lands of A. M. Tullis. | 430 | 4,252 | 70 | Paid to D. E. Callahan, July 2, 1877. |
| Goldman, Chas., | Swamp Land Survey No. 492........... | 195 | 1,888 | ........ | |
| McIntyre, Geo., | Swamp Land Survey No. 507........... | 114.98 | 0,000 | 00 | |

From this it appears that no part of the estimated cost of reclamation was imposed upon the McIntyre tract, the charge against it being represented by a row of ciphers. It is here urged that this vitiated the entire assessment. It is found that the commissioners jointly viewed the lands in the district, and assessed on these land other than the McIntyre tract the whole assessment to be raised.

The court below found that this piece of land was excluded from the assessment because it lies at the extreme lower end of Grand Island (a part, or the whole of which island constituted the district), and was a narrow strip running to a point, and owing to the flow of waters of Cache Creek at that point, it would be difficult to maintain a levee around it.

There was but one witness (William Gwynn) who testified on this point. His testimony is as follows: "I was a trustee of District No. 3 from May 10, 1871, to about May 10, 1874; am famliar with its levees, localities, and position. Swamp Land Survey No. 507, containing a little over one hundred acres, comprises the south end of the island. The land in that survey is an elongated three-corner triangle; in 1871, the land then being very low and in times of high water, Cache Slough, which is opposite, would overflow and inundate, and so high and great was the rush of waters that we feared if we put the levee there it could not be sustained, and thought that the best way was to make a cross-levee above this rush of waters; it was to save the upper levees; that was the intention of that, and the trustees so decided."

Swamp Land Survey 507 is McIntyre's land.

We infer from this testimony that this land was left outside of the levee, for the reason that the expense of constructing and maintaining the levee so as to include it would be greater than any profit or benefit to the district, or the tract that would result from including it, and not alone because it was difficult to maintain it. Therefore a cross-levee was built excluding this tract. We think the court erred in finding that the difficulty of maintaining a levee so as to include this McIntyre tract was the sole or controlling reason for excluding it, and that it should have found as indicated above.

But it is said that under any circumstances the failure to

assess the McIntyre tract was fatal to the assessment. It is evident from the testimony above given that the land was not assessed because it was not benefited. Does the law require that lands within a reclamation district, not benefited, shall be assessed? Clearly, here the land of McIntyre was not and would not be benefited at all. Why should anything be assessed upon it when the reason by which assessment for benefits is sustained does not exist? It would the height of injustice to put a charge upon land upon a surmise or theory that it is or would be benefited, when the fact is established that it is not and would not be benefited.

Nor do we think that the statute makes any such requirement. The benefits to each tract are to be adjusted by the commissioners as it is in their judgment benefited. Full discretion is vested in them to fix the amount to be paid, and such amount must be fixed as a measure of the resulting present or prospective benefits. If no benefits, no assessments must be charged on the land. According to the view urged by the respondent's counsel, an assessment, however small, would satisfy the requirement of the law. Even one cent or one mill would be sufficient. In this state of the case we think the maxim *de minimis non curat lex* applies. If one cent or one mill would satisfy the demands of the law, and we are of that opinion, we do not think that we should be justified in holding the entire assessment null for the failure to assess so insignificant a charge.

Nor do we think that a deviation from the approved plans in making the reclamation, where no injury results from such deviation, but rather a benefit, is outside of the discretion vested by the statute in the trustees. Some discretion must be left to the trustees in regard to the work, and a trifling deviation from the plans, or a deviation which would result in benefit, should not be regarded as a violation of the requirements of the statute. A work of reclamation with a deviation justifiable under the circumstances may well be regarded as a substantial compliance with the original approved plan.

But it is further urged that the board of supervisors of Sacramento County had no power to order a further assessment, because the formation of the district was not approved by it. And to maintain this point, we are referred to section 34 of the

Act of 1868, as amended in 1872. By the section as amended, it is provided that "in case the original assessment be insufficient to provide for the complete reclamation of the lands of the district, or in case further assessments be required from time to time to provide for the protection, maintenance, and repair of the works of reclamation, the trustees shall present to the board of supervisors of the county, by whom the formation of the said district was approved, a statement of the work done, or to be done, and its estimated cost, and said board shall make an order" for the assessment.

The formation of the district in this case was not approved by the board of supervisors of the county mentioned, nor was it required by the statute. Section 43, which provides for the organization of a district already formed when the Act of 1868 went into effect, did not require such approval. That section required that a notice should be given by publication in a newspaper published in the county, or by posting three notices in the district, for the election of trustees and the establishment of by-laws. It then prescribes that the holders of certificates of purchase or patents, or their agents, representing one half the land held, shall constitute a quorum for the transaction of business at such meeting; and the trustees elected at this meeting shall have power, and it shall be their duty to carry out and complete all unfinished business commenced by the board of supervisors, and to do all other things authorized by the by-laws of the district, or by this act.

It appears that such a meeting was called and trustees elected. When this was done, we are of the opinion the district was organized under the Act of 1868, and this was clearly ruled in the opinion of the lower court. The provision as to the approval of the formation of the district applies only to districts originally formed under the act (§§ 30, 31), and has no application to districts previously formed and organized under the Act of 1868. It is further provided, as to such previously existing districts, that whenever any such district shall organize under the provisions of the Act of 1868, the supervisors of the county shall turn over to the trustees all the books and papers in their possession relating solely to that district.

It was certainly the intention of the framers of the act, as it

was at first provided, that whenever the tax levied should be insufficient to pay for the reclamation, or for necessary repairs, the supervisors of the county where the district was situated, should, upon revised estimates furnished by the trustees, make additional levies of assessment for that purpose. (§§ 33, 34.) Such intention existed and applied as well to districts previously existing and organized under it as to districts originally formed under it. Such intention is indicated by what has been just above cited from the statutes. We see no reason to hold that such intention on the part of the legislature ceased to exist by the amendment in 1872 of section 34. Further, the object of the requisition of the amended section to present the statement mentioned to the board of supervisors, by which the formation of the district was approved, was to direct to what board the statement should be presented when the district included lands lying in more than one county. In such case a copy of the petition, after approval by the board of supervisors of the county to which it had been first presented, had to be furnished by the trustees to the board of supervisors of each county in which any portion of the lands lay. (§ 32.) This provision was inserted to designate to the trustees to what board to present a statement, where the lands lay in more than one county. But one board had to approve the petition, and the statement was to be presented to that county, no matter in what number of counties the lands of the district lay. But when the lands, as in this case, were in one county, to that board only must the petitioner go. Under such circumstances, the board of that county alone was to deal with and order the levy. We think it sufficiently appears from the whole act that the intention was that the statement, in case the land was situated in one county, should be presented to the board of supervisors of that county.

We are of opinion that the statement herein was properly presented to the board of supervisors of Sacramento County, in which county the district was situate, and in so ruling we are carrying out the intention of the law makers. We are, therefore, of opinion that this objection to the assessment cannot be sustained.

For the reasons above pointed out, the judgment and order must be reversed and the cause remanded to be tried anew

in accordance with the views herein set forth, and it is so ordered.

MYRICK, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.