W. T. ADAMS ET AL. *v.* AMERICA ADAMS ET AL.

[59 South. 84.]

1. ADOPTION.   *Decree.   Effect.   Collateral attack.   Code* 1880, *section* 1496.

Where a petition was filed under Code 1880, section 1496, seeking the adoption of a minor and a decree was entered providing that the custody of the minor be awarded to the adopting father; that he be clothed with all the rights and bound by all the obligations with reference to said child as that of a parent; that said child be clothed with all the rights and bound by all the obligations with reference to the adopting father and his estate, real and personal, at his death, as that of a daughter, and that the name of the child be changed to that of the adopting father. Such a decree creates, the relationship of heir on the part of the adopted daughter.

2. SAME.

Where the court granting the decree of adoption had general jurisdiction of the subject-matter and of the parties before it, on collateral attack it will be presumed that the petition was presented to the circuit court of the proper county.

3. SAME.

To sustain an adoption oral evidence may properly be received of supporting facts not disclosed from the record or writing evidencing the adoption.

4. SAME.

There is nothing in section 1496, Code 1880, providing that a petition for adoption of a child should state the name and age of the child, the names of the parents or guardians, etc., which requires that these averments must appear affirmatively in the record in order that jurisdiction may exist, and a decree of adoption is good, when collaterally attacked, where the mother and the adopting father joined in the petition for adoption, although the petition did not disclose the name of the father of the child or its guardian or whether they were living or whether their consent, if living, had been obtained.

APPEAL from the chancery court of Tishomingo county. J. Q. ROBBINS, Chancellor.

Suit by W. T. Adams and others, alleged heirs of W. W. Adams, deceased, against America Adams, the alleged widow of decedent, and another, for the possession of property of which decedent died seised. From a decree for defendants, complainants appeal.

As an exhibit to the bill the decree of adoption is filed. The petition seems to have been lost; but the decree, bearing date March, 1887, shows that the mother of the infant (then three months old) was Nancy Ann Gorman, and that she filed a petition praying that W. W. Adams be empowered to adopt the child, and praying that her surname be changed to Adams. The decree closed with the following clause: ''It is therefore ordered, adjudged, and decreed that the custody of said Eliza Parmelia Gorman be awarded to said W. W. Adams; that he be clothed with all the rights and bound by all the obligations with reference to said child as that of a parent; that said child be clothed with all the rights and bound by all the obligations with reference to said W. W. Adams and his estate, real and personal, at his death, as that of a daughter; and that the name of said child be changed to Eliza Parmelia Adams.''

In the year 1889 a petition on behalf of said child was filed, setting up the fact that papers in this proceeding had been destroyed by fire after the decree had been spread upon the minutes (which were not destroyed), and praying that the petition then filed and a suitable decree, together with the decree of adoption, be adopted as the original record in the proceedings, and that the record be made final. This petition was sustained.

*W. J. Lamb,* for appellants.

Solicitors for appellees, in their briefs, cited the case of *Crimstead* v. *Foute,* 26 Miss. 481, and quoted from the same as follows:

''The record shows that the court had jurisdiction both of the cause of action and of the party and the law pre-

sumes that every fact necessary to enable the court to render judgment according to strict justice appeared on the trial.

We contend that this question directly opposes the contention of the appellees in this case and sustains the contention of the appellant, for this case said:

"As is seen by the quotation, the record shows that the court had jurisdiction both of the cause of action and of the party."

The record in this case does not show that the court had jurisdiction and leaves out every essential allegation to show that the court had jurisdiction, and, under our contention, the petition of adoption must affirmatively show that the court did have jurisdiction and that can only be done by showing each and every requirement promulgated in the statute allowing adoption. A petition for an adoption is jurisdictional in its character and the facts which are required by the statute to give the court jurisdiction must appear in the face of the petition itself. *Watt* v. *Dull,* 75 Am. St. Rep. 143.

Our contention is that the facts necessary to give the court jurisdiction must appear in the petition, and if they do not apear in the petition, then all action taken by the court is null and void for want of jurisdiction; and it will not be contended that the facts necessary to give the court jurisdiction according to the statute appear in the substituted petition of adoption in this case.

As is said in the case of *Ferguson* v. *Jones,* 11 Am. St. Rep. 818:

"The statute must receive a strict interpretation and every requirement essential to authorize the court to exercise the special power conferred must be strictly complied with."

Solicitors for appellee contend for the theory that the court must supply what the law requires the petitioner to supply and therefore presume the court had jurisdiction. This is not a sound contention, nor is it sus-

tained by the authorities; for, as was said in the case of *Watts* v. *Dull,* 75 Am. St. Rep. 145:

"Although under the general doctrine announced that everything will be presumed to be within the jurisdiction of the court when proceeding under a special statute which does not distinctly appear to be within it, it would seem that such presumption as to name and residence being unknown would not be entertained but that the petition by omitting any allegation on the subject is fatally defective." *Watts* v. *Dull,* 75 Am. St. 145.

Now, in this case just cited, the name and residence were not known and nothing said about it in the petition. In the case at bar, there is nothing to show that W. W. Adams, the petitioner, and that Eliza Parmelia Gorman and her mother, Nancy Ann Gorman, were residents of Tishomingo county. There is nothing to show that he ever intended to confer any gifts, grants, bequests or benefits on the appellee, Bettie South. There is nothing to show that the consent of the father, if living, or of the guardian, was procured, or whether or not her father was dead or that she had a guardian. There is nothing in the entire record to show that the chancery court of Tishomingo county, ever had any jurisdiction whatever in the matter.

The cases of *Starke* v. *Ratcliff, Johnson* v. *Eaves* and *Cole* v. *Potter,* cited by counsel for appellees, we do not think are at all in point and shed no light whatever on this controversy.

Solicitors for appellees contend, in speaking of the substituted adoption proceedings, and use the following expression in their brief, to-wit:

"In view of the foregoing, appellees contend the court should presume in the absence of a full setting out of the language and contents of said destroyed petition that if so set up the said petition based thereon as quoted above, would show it to be in conformity therewith."

Now, there is no proof in the record to show that the substituted decree did not set out in full the original

petition and decree, and for the court to presume that there was something in the original proceedings which was not contained in the substituted papers, is asking something unknown to legal jurisprudence.

This question has been settled by our statute. By reference to section 3173 of the Code of 1906 of Mississippi, which deals with lost records, in the last clause of said section the court will find the following:

"And the same (meaning substituted papers) shall be filed and become to all intents and purposes the records."

The court will notice that the statute says: The record, which of course means that it is the only record that is to be considered, or that can be considered, for it stands in lieu or in place of one for which it was substituted.

This same section, a little higher up, says that, "The petition shall aver to be a copy of the record in all material particulars which is sought to be re-established." So this case must be passed on by the court just as if the substituted papers were the original papers and there was never any papers in this adoption proceeding except the one now before the court.

The different courts of last resort, where there is no statute to guide them, have adopted the same to be the law regarding substituted papers as well as the different text written. 34 Cyc. 609-610; *Peddy* v. *Street,* 87 Ala. 299; *Atkinson* v. *Keel,* 25 Ala. 551; *Starns* v. *Hadnot,* 42 La. 366.

The above authorities sustain and declare this to be the law on the substitution of papers:

"The record duly substituted on proper proceedings by order of a court of competent jurisdiction in the place of one lost or destroyed has the same efficacy, force, and effect as the original record would have, no more and no less. The judgment or decree of substitution merely supplies record evidence of a record previously

in existence, and determines that such record did exist, was lost or destroyed, and is replaced, by a substitute which substantially confirms to the original record, and does not establish a legal sufficiency of such substitute for any particular purpose, this being the same as that of the original record." 34 Cyc. 610.

The last above quotation expressly holds that the substituted papers merely supplied a record evidence of the record previously in existence and does not establish the legal sufficiency of such substitute for any particular purpose, this being the same as that of the original record. *Whitney* v. *Jasper Land Co.,* 119 Ala. 497.

Instead of counsel's contention being correct, it is directly opposed to all authorities on this subject; so the case reverts to, what rights has the appellee, Bettie South, to inherit under the adoption proceedings, as shown by Exhibit A. of the appellants' bill? In Am. & Eng. Ency., we have the following:

"The sole object of the proceedings (meaning substitution proceedings) is to restore the record, and the end of justice would not be promoted by complicating it with any other issues. Consequently, though a lost judgment may be voidable, the record should nevertheless be restored and then the defendant may resort to such defenses as he may have precisely the same as if the record had not been lost or destroyed." 19 Am. & Eng. Enc. 558; Vail v. Inglehart, 69 Ill. 336; Hanke v. Herrum, 48 Iowa, 276.

*Young & Young,* for appellee, filed a brief but it is lost from the record.

Argued orally by *W. J. Lamb* for appellants.

WHITFIELD, C.

The case of *Beaver* v. *Crump,* 76 Miss. 57, 23 South. 432, is not at all in point in this case. That was an attempt to enforce specific performance of an agreement

to devise all that had not been devised, without any spec-ification of what was to be devised. The court held that there could be no specific performance of an agreement so utterly vague and indefinite as to what was to be de-vised. The decree in this case simply creates, and clearly and definitely creates, the relationship of heir on the part of the adopted daughter.

The only question in this cause which has given us trouble, and that has given us considerable trouble, is the point made that the court was without jurisdiction to hear the cause and render the decree, because the petition and proceedings under section 1496 of the Code of 1880 did not contain certain averments set out therein. It is said that there is nothing to show, first, that the petition was presented to the circuit court of the county in which the adopting father of the infant resided; and, second, that there was nothing to show the name of the father of the infant, or its guardian, or whether they were living or dead, or whether the consent of the father if living, or of the guardian, if living, had been obtained. In this case it does appear that the mother of the infant joined in the petition with the adopting father, and that she had the custody of the infant. There are decisions to the effect that, where the parent having custody of the child joins in such petition, that is sufficient.

The court had general jurisdiction of the subject-matter and of the parties before it, and on collateral attack it will be presumed that the petition was pre-sented to the circuit court of the proper county.

As to the want of the other averments, we think the true rule is stated by Mr. Freeman in his able note to *Van Matre* v. *Sankey* (Ill.), 39 Am. St. Rep. 215, *et seq.* He says:

"The validity of adoptions, when questioned in col-lateral proceedings, depends very much upon the views of the court before which the question is presented respecting the character of the proceeding and of the

statutes by which it is authorized. Of course, if the proceedings were conducted in strict compliance with the statute, and this appears to the court by such evidence as it deems competent and satisfactory, there can be no question except as to the constitutionality of the statute, and no statute authorizing adoptions has, up to the present time been held unconstitutional in any respect. But more frequently than otherwise there has been some omission or irregularity in the proceedings, or, at least, the existence of a strict, or even a substantial, compliance with the statute does not appear from the written evidence of the adoption proceedings themselves, and then these questions arise: (1) Can the proceedings be supported by extrinsic evidence? and (2) Does the omission, or irregularity, supposing it still to appear notwithstanding such evidence, render the proceedings void? There have, undoubtedly, in connection with the question of adoption, been some absurd judicial utterances, by way of application of the absurd rule that statutes in derogation of the common law should be strictly construed, and this notwithstanding the fact that the Code, of which the adoption law under consideration was a part, expressly declared that the rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code,' and that the provisions of such Code were to be 'liberally construed, with a view to effect its objects and to promote justice.' Civ. Code Cal. sec. 4. . . . ..

"As to the notion that the existence of all acts necessary to sustain an adoption should appear by the record, nothing can be more absurd. In the first place, when a court has attained the dignity of a court of record, its jurisdiction and the rightfulness of its action are presumed, and, when it has not attained such dignity, it has no record by which it can speak; and, in the second place, the rule respecting judicial officers,

and courts of limited jurisdiction and authority, is that, except when required to make and preserve some written evidence of their jurisdiction, it may be established by extrinsic evidence, whether oral or written. *Jolley* v. *Foltz,* 34 Cal. 321; *Reclamation District* v. *Goldman,* 65 Cal. 638, 4 Pac. 676; *Williams* v. *Cammack,* 27 Miss. 209, 61 Am. Dec. 515; *Barnard* v. *Barnard,* 119 Ill. 98, 8 N. E. 320; *Van Deusen* v. *Sweet,* 51 N. Y. 378.  Hence, in the most recent decision upon the subject, the case of *Ex parte Clark,* 87 Cal. 641, 25 Pac. 967, hereinbefore cited, has been explained and modified, and the rule announced that, to sustain an adoption, oral evidence may properly be received of supporting facts not disclosed from the record or writings evidencing the adoption. *Estate of Williams,* 102 Cal. 70, 36 Pac. 407, 41 Am. St. Rep. 163.

"If there are any statutes in favor of which liberal presumptions and intendments should be indulged to support proceedings taken in good faith thereunder, the statutes authorizing the adoption of minors should be included among them."

There is nothing in section 1496 of the Code of 1880 providing that these averments must appear affirmatively in the record in order that jurisdiction may exist. This, it must be remembered, is a collateral attack on these proceedings, and the proceeding for the adoption of the child was a strictly judicial one.  It might have been better practice, as held in *Barnard* v. *Barnard,* 119 Ill. 92, 8 N. E. 320, to set out all the averments named in section 1496 as proper to be set out.  But the mere statement in the statute that these averments should be made, without saying they should be jurisdictional, certainly does not result in destroying the jurisdiction of the court.  The case which we have found most directly in point is the case just referred to of *Barnard* v. *Barnard, supra,* and we adopt what is said in that case, and the comment of Mr. Freeman thereon, as

correctly stating the rule as to jurisdiction in this class of cases:

"If the proceeding for the adoption is judicial, and the officer or tribunal is acting as a court or judge, then, upon principle, the order of adoption partakes of the characteristics of a judgment; and if there is jurisdiction over the parties and the subject-matter, it cannot be avoided for errors or irregularities, except upon appeal or by motion to vacate it, and is therefore exempt from collateral attack. Thus, where it was claimed that an order of adoption was a nullity, because it was not shown that the county in which the petition was presented was the residence of the petitioner, nor tha' the father of the child was dead, nor, if living, that he consented to the adoption, the court said: 'It is not important here to inquire—this record coming before this court collaterally—whether the county court erred, simply, in decreeing as it did. The question is: Did it have jurisdiction to make any decree in the matter? If it had jurisdiction to decree in the case, the decree, until reversed, however erroneous merely, must stand. It will be observed that the statute clearly gives the court the power to decree as to the subject-matter, and the only question, therefore, is whether the parties required by the statute to be before the court in order that such a decree be rendered were in fact before the court. The presumption in the first instance is that the court had jurisdiction, unless it is aparent from the act itself that the court could not have had jurisdiction in any contingency, or unless the statute empowering the court to act requires the act to affirmatively show, precedent to its decree, some fact which it fails to show. There being no pretense of anything here showing affirmatively that Walter Barnard did not at the time of presenting the petition reside in McLean county, or that the complainant had a father alive who had not abandoned him at the time, it only remains to examine whether the pe-

tition affirmatively recites all the jurisdictional facts which the statute species shall be recited in it, for we have held no more need be recited.' *Barnard* v. *Barnard,* 119 Ill. 92, 98, 8 N. E. 320, 322.''

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the judgment is affirmed.                    *Affirmed.*
Suggestion of error filed and overruled.