[Civ. No. 1404.   Third Appellate District.—October 14, 1915.]

J. D. PAYNE et al., Appellants, v. W. W. WARD et al.,
Trustees of the Ward Drainage District, Inc., Respond-
ents.

DRAINAGE ACT—FIXING OF BENEFITS—DISCRETION OF COMMISSIONERS.—
Under the act providing for the formation of drainage districts
(Stats. 1885, p. 204), and the acts amendatory thereof (Stats. 1891,
p. 262 and Stats. 1909, p. 25), the fixing of the benefits to accrue
to each piece of land from the district and its proposed works is
a matter of judgment, and all that is required of the commissioners

and all that can be expected of them is that they shall honestly and intelligently investigate the situation, examine the lands, and fix a tax upon each piece of land as in their opinion it should properly pay, upon an apportionment of the whole amount to be raised, according to benefits.

ID.—FINDINGS OF COMMISSIONERS—PRESUMPTION OF CORRECTNESS—LANDS NOT BENEFITED—BURDEN OF PROOF.—The findings of the commissioners are *prima facie* evidence of their correctness, and the burden is upon those who claim that their lands would not be benefited by the district or its works, to prove their contention.

ID.—JUDGMENT OF COMMISSIONERS—PRESUMPTION.—The statute contemplates that considerable discretion shall be exercised by the commissioners in the determination of the question as to benefits which will accrue to the several tracts of land included in the district; and while an arbitrary assessment cannot be levied, the judgment of the commissioners upon the assessment, after a view of the land as contemplated by the statute, must be presumed to have been the result of a consideration of all the elements necessary to a just apportionment of the assessment.

ID.—ACTION TO RESTRAIN COLLECTION OF ASSESSMENTS—FAIRNESS OF ASSESSMENT—FINDINGS SUPPORTED BY EVIDENCE.—In this action to restrain the trustees of a drainage district from bringing suit to collect certain assessments alleged to be illegal, it is held that the presumptions of fairness and justice and correctness that the law makes in favor of the action of the commissioners in apportioning the cost and making the levy, supported by the testimony of witnesses, are abundantly sufficient to sustain the findings of the court that the plaintiff's lands would be benefited by the contemplated works of the district.

ID.—SPECIAL BENEFITS—INDIRECT BENEFIT—LEVY.—Special benefits to the owners of lands within the district may be considered in making the levy, although others not landowners in the district may receive some indirect benefits from the improved condition in the district.

ID.—NONASSESSMENT OF TRACT WITHIN DISTRICT—LACK OF BENEFITS—VALID ASSESSMENT.—A property owner cannot contend that the whole assessment is void because of the omission of the commissioners to assess a tract of land within the district, which they, in their judgment, conclude will not be benefited by the works of the district.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. J. A. Allen, Judge presiding.

The facts are stated in the opinion of the court.

Goodfellow, Eells, Moore & Orrick, and Drew & Drew, for Appellants.

Harris & Hayhurst, and L. L. Cory, for Respondents.

ELLISON, J., *pro tem.*—The plaintiff brought this action against the defendants as trustees of the Ward Irrigation District, to obtain a decree restraining them from bringing suit to collect certain assessments alleged to be illegal.

The district was established in accordance with the provisions of an act of the legislature to promote drainage, approved March, 1885 (Stats. 1885, p. 204), amended in 1891 (Stats. 1891, p. 262), and also in 1909 (Stats. 1909, p. 25), whereby a method was provided for the drainage of other than swamp and overflowed land. The plaintiffs' lands are a part of said district. After alleging the formation of the district, the complaint, by proper averments, recites that, after its formation, the board of supervisors of Fresno County, in which county the district is situated, appointed three commissioners to view and estimate, upon the lands situate in the district, the charges proportionate to the whole expense and to the benefits which will result from such work to the lands in the district; that plaintiffs' lands are high, never subject to overflow, and do not need drainage, and that the district and its works will be of no benefit to plaintiffs' lands but, on the contrary, will lower the sub-water level and permanently injure the lands; that notwithstanding the district and its works will be of no benefit to plaintiffs' lands but an injury, said commissioners levied an assessment on plaintiffs' lands of $1.88 per acre; that the assessment was void for the reason that the same was not levied pursuant to benefits to result from the work; that the commissioners did not view the lands to be assessed; that they intentionally omitted from the assessment-roll certain lands situate in the district which were subject to assessment and which would be benefited by the works of the district.

Among other findings, the court made the following:

"VI. The court further finds that all of the lands of all the plaintiffs need and require drainage and that said proposed drainage district and the works thereof will be of great benefit to all of the lands of the plaintiffs.

"VII. The court further finds that the assessment levied by said commissioners was levied upon the lands and premises of each and all of the plaintiffs, pursuant to the whole expense and proportionate to the benefits which will result from such work, and that said commissioners did view all of the lands which they assessed to the plaintiffs and did assess them in proportion to the whole expense of the works and of the benefits resulting to them from such works."

The court also found that a portion of the lands belonging to one S. W. Culveson and situated within the district were not assessed, for the reason that said portion did not receive any benefit from said drainage works.

The plaintiffs' contention is that these findings are not supported by the evidence.

The fixing of the benefits to accrue to each piece of land from the district and its proposed works was a matter of judgment and all that was required of the commissioners and all that could be expected of them was that they should honestly and intelligently investigate the situation, examine the lands, and fix such a tax upon each piece of land as in their opinion it should properly pay, upon an apportionment of the whole amount to be raised, according to benefits. The presumption is that they properly performed this duty. The act of 1885, providing for the formation of these districts, makes the findings of the commissioners *prima facie* evidence of their correctness. The burden was upon the plaintiffs to show that their lands would not be benefited by the district or its works. We are not here concerned with conflicts of evidence. The only question on this branch of the case to be considered is—Do the findings find substantial support in the evidence? It seems clear to us that they do.

The act of 1885 provides: The board of supervisors of the county in which a drainage district was formed must appoint three commissioners, disinterested persons residing in the county in which the district, or some part thereof, is situated, and such commissioners must view and assess upon the lands situated in the district a charge proportionate to the whole expense, and to the benefit which will result from the work. The commissioners appointed by the board of supervisors must make a list of the charges against each tract of land and the list must contain: 1. A description of each tract assessed; 2. The number of acres in each tract; 3. The owners of each

tract; 4. The amount of the charge assessed against each tract. Section 14 of the act provides: "The board of trustees of the district must commence actions for the collection of such delinquent installments, and delinquent assessments, with interest thereon, and costs and for the enforcement of the lien thereof on the land assessed, in the superior court of the county in which the land, or some portion of it, is situated. In any action to enforce said lien or to determine the validity of the same, said list, duly executed by said commissioners, or a certified copy thereof shall be *prima facie* evidence of the matters therein contained, and that said commissioners were duly appointed and qualified, as required by law, and that they did view and assess upon the land set forth in said list the charges therein contained, and that said charges are in proportion to the whole expense and the benefits that will result from the work of drainage for which said assessment was so levied."

As was said by this court, in construing a similar statute: "It is clear that the statute contemplates that considerable discretion shall be exercised by the commissioners in the determination of the question as to benefits which will accrue to the several tracts of land included in the district. By this we mean to say that, while an arbitrary assessment cannot be levied, the judgment of the commissioners upon the assessment, after a view of the land as contemplated by the statute, must be presumed to have been the result of a consideration of all the elements necessary to a just apportionment of the assessment." (*Reclamation Dist. No.* 70 v. *Sherman,* 11 Cal. App. 399, 417, [105 Pac. 277].)

The record shows that the commissioners, after viewing the land, decided to divide it for the purposes of assessment into two classes: one class consisting of all below the three-foot contour line and the other class including all lands above such line. They concluded that all the low lands as thus defined would be about equally benefited by the works of the district, and all the high lands—that is, lands above the three-foot contour—would be about equally benefited. Such was as near a correct basis for assessment as they thought it possible to adopt. At first they determined that a fair apportionment of the costs of the proposed works, according to benefits, would be to assess all the low lands about ten times as much per acre as the high lands, but finally fixed the levy at ten dollars per acre on the low lands and $1.88 per acre on

the high lands. The presumptions of fairness and justice and correctness that the law makes in favor of the action of the commissioners in apportioning the cost and making the levy, supported by the testimony of witnesses, are abundantly sufficient to sustain the findings of the court above quoted.

Frank Helm testified: "We decided that the low land should be assessed a good deal more per acre than the upper land, as it was going to be drained and relieved of this water. We had to raise $30,000.00 and we figured that the upper land should be assessed about $1.00 to every $10.00 on the low land. We considered that a just assessment and considered that proportion to be in accordance with the benefits received. The record introduced shows the actual assessment on the low land and on the high land. Now in fixing this assessment we considered the benefits that would accrue to the high lands from the drainage of the district. We knew that the water holes were unsanitary, and that they were naturally breeding places for mosquitoes, and that the fumes from such places were very disagreeable. It was an eyesore to the country and it was a general benefit to the whole country. We took that all into consideration in making the assessment. We also considered that the drainage would affect the market value of the lands. A swampy condition like that in any country is a very unsatisfactory place for people to live. I consider that the draining of that district would be very material, because people coming there to buy would not purchase property in that condition down there. I considered that it would enhance the market value about one to ten. We assessed the high lands uniformly at $1.88 an acre, as we thought that would be the more satisfactory way to get the assessment. The high lands were practically of the same condition and the low lands were practically of the same condition. . . . I think all the high lands would be benefited. A man purchasing land there would certainly pay more for it after the district had been put in."

Witness L. D. Scott testified: "I know there are lots of mosquitoes down there. I would say that the draining would be a benefit to my place, as the mosquitoes are a pest whenever they invade the country, to both man and beast."

Witness E. Poulson testified: "The construction of the ditch and draining that swamp affects the high lands in sev-

eral ways. It is an eyesore along the sand hollow and land like mine, the water-bed was coming close to the surface."

Witness W. W. Ward testified: "The draining of the swamp will increase the market value of the high land, I calculate, $10.00 an acre. I believe that any person who got a chance to sell would get $10.00 an acre more, and might be more."

These extracts from the testimony—and they might be greatly extended—are sufficient to show that the finding of the court that plaintiffs' lands will be benefited by the contemplated works of the drainage district finds substantial support in the evidence. Counsel makes the further contention that even if it be true that the drainage of the swamps will be to get rid of an eyesore, lessen the number of mosquitoes, decrease malaria and make the high lands owned by the plaintiffs better fitted for human habitation, still these benefits would be general to the community and not special to the plaintiffs and therefore their lands could not be taxed for them. The testimony shows that the benefits to plaintiffs' land from the district and its works will be different in kind and degree from the benefits to the section generally. Mr. T. H. Means testified that these swamps were breeding places for mosquitoes; that they only travel about eight hundred yards from their breeding place. Within the meaning of the rule, general benefits are enjoyed as a member of the community and not as the owners of property which is specially benefited. (1 Paige & Jones, Tax. by Assessment, sec. 645.) While it may be true that the improved conditions within the district resulting from its work will also be beneficial to those of the community living outside its boundaries but near thereto, still the owners of lands within the district, by virtue of their ownership, are receiving special benefits, in the enhanced value and productivity of their lands and in the improved health conditions. The evidence shows that the improved health conditions resulting from the drainage of the swamps would not extend much, if any, beyond the bounds of the district. These special benefits to the owners of lands within the district may be considered in making the levy, although others not landowners in the district may receive some indirect benefits from the improved condition in the district.

It is next claimed that the whole assessment is void because the commissioners did not assess one hundred and sixty acres of land within the district belonging to one S. W. Culbertson. The finding of the court is that this piece of land was not assessed because the commissioners did not think it would be benefited by the works of the district. In *Reclamation District* v. *Goldman,* 65 Cal. 640, [4 Pac. 676], it was held: "The benefits to each tract are to be adjusted by the commissioners as it is in their judgment benefited. Full discretion is vested in them to fix the amount to be paid, and such amount must be fixed as a measure of the resulting present or prospective benefits. If no benefits, no assessments must be charged on the land. According to the view urged by the respondent's counsel, an assessment, however small, would satisfy the requirement of the law. Even one cent or one mill would be sufficient. In this state of the case we think the maxim *de minimus non curat lex* applies. If one cent or one mill would satisfy the demands of the law, and we are of that opinion, we do not think that we should be justified in holding the entire assessment null for the failure to assess so insignificant a charge."

The record shows that plaintiffs were in no wise injured by the nonassessment of this one hundred and sixty acres of land. Culbertson owned three hundred and twenty acres of land in the district and the commissioners concluded it would be benefited only one-half as much per acre as the other high lands in the district and at first contemplated assessing the whole three hundred and twenty acres at 94 cents per acre, that being in their judgment a fair assessment, but instead of so doing they assessed on one-half of it at the full price. The result of the assessment and the amount of his tax were just the same by adopting one method as the other, and it clearly appears from the testimony that if it had all been assessed at 94 cents per acre instead of one-half at $1.88 per acre, the tax against this land would have been exactly what it is. "A property owner cannot complain of an irregularity in apportioning an assessment, if it is not shown that by reason of such irregularity the assessment against his property is larger than it would have been if the assessment has been made properly." (2 Paige & Jones on Taxation by Assessment, sec. 723.)

We conclude that the findings attacked are supported by the evidence, that the plaintiffs suffered no injury from the manner of the assessment of the Culbertson land, and that the judgment and also the order denying plaintiffs' motion for a new trial should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 13, 1915.