[L. A. No. 11285. In Bank.—September 30, 1931.]

SECURITY TRUST & SAVINGS BANK (a Corporation), Respondent, v. SOUTHERN PACIFIC RAILROAD COMPANY (a Corporation) et al., Appellants.

Frank Thunen for Appellants.

Anderson & Anderson and Walter M. Campbell for Respondent.

THE COURT.—This is a suit against defendant Southern Pacific Railroad Company, the vendor under a contract for the sale of real property, to rescind an agreement of cancellation of part of said contract. Plaintiff bank sues as trustee for Atlantic and Pacific Fibre Company, the purchaser. The property involved is part of a federal land grant to defendant, and the essential facts necessary to an understanding of the controversy are as follows: On July 27, 1866, Congress made a grant of lands to Southern Pacific

Railroad Company for the construction of a railroad, and thereafter the company filed its map of general route, from Mojave to Needles. After some administrative disapproval, the road as constructed was sanctioned, and became known as its *main* line, to distinguish it from a *branch* line subsequently constructed. The latter branch line from Mojave to Yuma was authorized, and a grant of lands was made to the company by the act of March 3, 1871. During approximately the same period the Atlantic and Pacific Railroad Company was incorporated and Congress authorized it to build a road from Missouri and Arkansas to California. A grant of lands was also made to this company. It filed a map on April 11, 1872, but never constructed a road, and the granted lands were subsequently, in 1886, forfeited to the United States.

By the terms of the acts, the granted sections were to be taken from lands lying within a twenty-mile strip on either side of the road. Where for any reason title could not be secured to lands located in that manner, which were *primary* grants, provision was made for selection of other lands within a ten-mile additional strip, as *indemnity*. The routes which have just been described paralleled each other in many places, and this caused a considerable amount of overlapping of the granted lands. Not only was there such overlapping between the Southern Pacific and the Atlantic and Pacific, but the Southern Pacific main and branch line grants overlapped; and there were additional conflicts between primary and indemnity lands. Extensive litigation ensued between the Southern Pacific and the United States government, for the purpose of clearing the titles.

On July 23, 1885, the Southern Pacific Railroad Company entered into four executory contracts to sell 50,000 acres of its granted lands at $1 per acre to Atlantic and Pacific Fibre Company, a British corporation. The purchase price was paid at once, but most of the land being as yet unpatented, and the title uncertain, it was provided that the said sum of $1 per acre should be returned, without interest, for every acre to which title eventually failed. The only contract which concerns us here is that numbered 4723, covering 17,768.41 acres. On April 21, 1903, after years of litigation between the Southern Pacific and the federal

government, the parties agreed to a partial cancellation in accordance with the provisions of the contract, involving 2,162.09 acres, title to which then appeared to be lost to the railroad company. The sum of $2,162.09 was refunded to the Fibre Company. Thereafter, the railroad company continued its battle to secure title to the lands. Its original attempt had been to secure them under the act of 1871. Now, however, it proceeded to make its claim under the *main line primary grant* of the act of 1866. In this it was successful, and patent was issued as to the lands involved in this action on September 22, 1921.

On September 5, 1918, plaintiff was advised by its attorney that defendant would probably secure the patent. Plaintiff communicated this fact to the Fibre Company, and on December 3, 1918, served upon defendant notice of rescission of the cancellation. The consideration received ($2,641.21) was tendered. The notice was ignored, and a second notice was served, which likewise met with no action on the part of defendant. Subsequently this suit was brought. The court found that the cancellation of 1903 was entered into under mutual mistake, both parties then believing the title to be absolutely lost; that plaintiff had given proper notice of rescission promptly upon discovery of the facts, and had brought the suit with reasonable diligence and within the period of the statute of limitations. Other findings touching upon other issues were all in favor of plaintiff, and will be considered hereinafter. Judgment was rendered for the plaintiff, and defendant brought this appeal.

█ Defendant strenuously insists that the cancellation was not induced by mutual mistake, but was in fact a compromise, and that the Fibre Company actually invited and eagerly accepted it because the lands were at that time deemed to be worthless. While the evidence is in some conflict, and permits of various inferences, we think that the one drawn by the trial court finds substantial support in the record. The Fibre Company was represented in all of the negotiations by Jackson A. Graves, a California attorney, and he did at times, and particularly in his letter to the company on September 8, 1902, suggest that it would not be worth while to continue the litigation for the title. But it does not satisfactorily appear that this pessimistic opin-

ion led to any similar feeling or action on the part of the Fibre Company. In 1903, counsel for defendant advised Graves that it had definitely lost title to the property, and Graves so advised the officials of the Fibre Company. Graves thereupon proceeded to deliver up the contract for partial cancellation without further direction from the Fibre Company. As to the mistake the record is not in doubt. There is ample evidence tending to show that this belief in the loss of the title, as a result of the failure of the years of litigation to establish it under the act of 1871, was concurred in by all of the responsible parties. The railroad company apparently overlooked the possibility that the land might be claimed as within the primary limits of the main line, under the act of 1866. Little reference to authority is needed to show that such a mutual mistake as to a basic element of the contract is grounds for rescission. (See *Hannah* v. *Steinman,* 159 Cal. 142 [112 Pac. 1094] ; 13 Cal. Law Rev. 246.)

In addition to its argument on the merits of the issue, defendant also sets up a number of special defenses, the first being that plaintiff has no authority to bring this action on behalf of the Fibre Company. It is pointed out that the suit is brought as trustee, and that there is no instrument executed by the Fibre Company directly constituting plaintiff such trustee. Irrespective of the fact that the point was not raised by demurrer, we believe with the trial court that such authority was present. In the early stages of the controversy, when the government first challenged the title to the lands, Graves advised the Fibre Company to take advantage of an act of Congress which protected citizens who were *bona fide* purchasers of such property. Acting upon his advice, the Fibre Company on January 27, 1893, made an assignment to him, absolute in form, under which he made application for title. But the transfer was actually without consideration, and it was understood and repeatedly asserted by him to his partners as well as to the Fibre Company, that he took the assignment as trustee, to hold the title for the benefit of the company. The assignment was consented to by defendant on March 28, 1893. It is now contended by defendant that as far as it was concerned, Graves' title was absolute. But the record indicates full knowledge on the part of defendant of the

true circumstances. For example, the Fibre Company remained a party defendant in the title suits after the assignment to Graves and after he had been joined. And when Graves' application was before the courts, he made no concealment of the actual facts, and his claim as a *bona fide* purchaser was adjudged invalid. There are various other indications which need not be developed. On March 21, 1914, Graves made an assignment to plaintiff. The assignment covered all the right, title and interest in contract No. 4723, although the lands specifically described therein did not include the lands involved in this action. This assignment was expressly consented to by defendant. Later, on December 2, 1918, Graves quitclaimed to plaintiff all of his rights under the contract and to the lands in controversy, and the second notice of rescission advised defendant of this fact, and also of the fact that the rescission was made on behalf of the Fibre Company as owner, by plaintiff bank as trustee. In the quitclaim deed of May 10, 1919, from the Fibre Company to Walter Campbell, hereinafter discussed, the right to enforce the rescission previously made is specifically assigned. Irrespective of the validity of this assignment, there can be no doubt but that it gave notice to defendant of the authority to sue on behalf of the Fibre Company, and what is more important, of the approval by the Fibre Company of the rescission. Without going further into the details of the complex negotiations, we are satisfied that their effect was to substitute plaintiff as trustee for the Fibre Company with the approval of said company. This being so, plaintiff could sue in its own name. (Cal. Code Civ. Proc., sec. 369; *Tandy* v. *Waesch*, 154 Cal. 108 [97 Pac. 69].)

■ Nor do we see any merit in the contention that plaintiff, having originally sued as owner of the lands, had no right to amend its complaint, after the period of the statute of limitations had elapsed, to claim as trustee. It is not seriously contended, nor could it be contended that the plaintiff bank ever claimed in its own right. Its title was derived from Graves, and was, as his, admittedly the title of a trustee. The first complaint did not fully set forth the circumstances, nor fully allege the fact of trust relationship; the amended complaint did. The amendment did not substitute a new cause of action and did not

prejudice the rights of defendant. We think that the trial court was clearly justified in permitting the amendment, under the liberal rules prevailing in this state. (See *Rabe* v. *Western Union Tel. Co.*, 198 Cal. 290 [244 Pac. 1077].)

▮ The only other contention which requires discussion is that plaintiff is estopped by a former judgment on the same issues. On May 10, 1919, prior to the commencement of the present action, the Fibre Company and plaintiff made an assignment to Walter Campbell, attorney for the plaintiff, of their interest in and causes of action relating to those lands included within contract No. 4723, which were the subject of the cancellation agreement of 1903. Campbell thereupon brought a suit against defendant based upon the same notice of rescission and made substantially the same allegations as in the instant case. But the defendant railroad company raised the objection that the partial assignment had been made without its consent, as required by the terms of the contract, and the court properly held the assignment void, thus leaving Campbell without authority to maintain any action. Defendant asserts that there were other reasons for holding the assignment void, but whether this is true or not is immaterial. The important fact is that this proceeding between Campbell and defendant was not decided on the merits. The judgment was therefore not conclusive on any of the issues involved herein, and the doctrine of estoppel by judgment can have no application.

We have carefully examined the other points made by defendant, and find nothing in them to require a reversal of the judgment. Like the matters already discussed, they deal almost entirely with the inferences to be drawn from the evidence contained in a voluminous record. ▮ It is, for example, contended that the assignment to plaintiff was of nothing more than the right to file a suit in equity for relief on grounds of mistake; but the record shows that the title to the land was transferred to it, as trustee, and where the title is transferred, the equitable right follows. (*Wikstrom* v. *Yolo Fliers Club*, 206 Cal. 461 [274 Pac. 959].)

▮ It is further argued that what is being sought is reformation, and not rescission; but obviously, so far as the agreement of partial cancellation is concerned, a rescission is the remedy demanded. ▮ Nor does the record support the contention that the action to rescind is barred by

laches. Graves, it appears, did not maintain close touch with the litigation which was being carried on by the attorneys for the railroad company; and in 1903 he discontinued his law practice. Whether he had notice of the possibility of securing the title under the new proceedings is a question which was resolved by the trial court on conflicting evidence, and we are not convinced that its conclusion was incorrect. Moreover, there is no evidence that the alleged delay worked a disadvantage to defendant, and without such a showing the claim of laches cannot be successfully maintained. (*Newport* v. *Hatton*, 195 Cal. 132 [231 Pac. 987]; *Simmons* v. *Briggs*, 69 Cal. App. 447 [231 Pac. 604].)

■ Defendant finally complains that the judgment is erroneous in not requiring plaintiff to pay interest on the sum restored, from the date of cancellation to the date of tender. We do not think that this is a necessary prerequisite to rescission. The requirement that everything of value be restored (Cal. Civ. Code, sec. 1691) and that defendant be restored to substantially the same position as if the contract had not been made (Cal. Civ. Code, sec. 3407) was satisfied when the money actually received was returned. The purchaser had the use of the money during that period, it is true, but defendant presumably had the use of the land.

■ It is pointed out by defendant that under section 3408 of the Civil Code the court may require the party to whom the relief is granted to make any compensation to the other which justice may require. In this case, the judgment required plaintiff to reimburse defendant for taxes paid, with interest thereon. This was, we think, all that might reasonably be demanded. Between the time of the original sale in 1885 and the cancellation in 1903, defendant had the use of the purchase money paid by the Fibre Company, which it later returned without interest. The equities seem to be fairly well balanced.

We have not attempted in this opinion to discuss all of the complex factual situations set forth in the briefs, but we have examined them all and find ourselves in agreement with the trial court on each issue.

The judgment is affirmed.

Rehearing denied.