[S. F. No. 16873. In Bank. July 8, 1943.]

MRS. W. A. ALLEN et al., Respondents, v. CALIFORNIA MUTUAL BUILDING AND LOAN ASSOCIATION (a Corporation) et al., Appellants.

478

Robert W. Kenny, Attorney General, I. M. Peckham and Lenore D. Underwood, Deputies Attorney General, D. T. Jenkins and Patrick J. Kearns for Appellants.

Frank W. Sawyer and Wm. R. Biaggi for Respondents.

EDMONDS, J.—So far as the merits of the controversy are concerned, Allen and those who in the superior court established their right to share in the assets of California Mutual Building and Loan Association, are in the same position as the investors whose judgment against that now insolvent corporation was affirmed in *Alexander* v. *State Capital*

*Co.*, 9 Cal.2d 304 [70 P.2d 619]. The association and the Building and Loan Commissioner, in appealing from the judgment rendered against them, do not deny that, by fraudulent representations, the respondents were induced to exchange their investment certificates for stock of the State Capital Company, but they contend that (1) the failure to file a claim against the insolvent corporation; (2) the statute of limitations; and (3) laches, bar any recovery by them.

In their second amended complaint, the respondents alleged that prior to January 23, 1933, each of them became, and still is, an investor in the association by the purchase of an investment certificate and a deposit of money which is recorded in a pass book account and deposit book. On that date the association was taken over by the Building and Loan Commissioner for the purpose of liquidation. Four years previously, State Capital Company was organized as an agency of and for the purpose of assisting the association in the transaction of its business. By fraudulent representations of the association's agents during the period from 1929 to 1931, the respondents were induced to exchange their "investments" for shares of stock of State Capital Company, to their damage in the amount of their respective deposits in the association.

The complaint refers to the respondents not only as the owners of building and loan investment certificates but also as "investors" having "investments" or "holdings" in the association. The record is not specific in identifying the status of each one of them, but from the findings it may be inferred that some of the respondents held withdrawable mutual membership shares and others owned investment certificates. (See *Martin* v. *California Mut. B. & L. Assn.*, 18 Cal.2d 478 [116 P.2d 71].)

When the case was called for trial, before the first witness was sworn, the appellants objected to the taking of any evidence upon the ground that the complaint does not state a cause of action. This objection was sustained, and judgment rendered for the appellants upon the pleadings. Later, the court granted a motion for a new trial and, upon appeal, its order was affirmed. *(Allen* v. *California Mut. B. & L. Assn.*, 40 Cal.App.2d 374 [104 P.2d 851].) This court denied a petition for a hearing.

By its decision, the District Court of Appeal held that

Allen and his associates sued to assert rights as investors, hence "They were entitled to plead an action to quiet title. That they have done and more too." Also, said the court, "The plaintiffs alleged that by the fraudulent representations of the defendant corporation they were induced to exchange securities, issued by the defendant corporation, for securities of State Capital Company, an agent of said defendant; that such exchange was not based on any consideration moving from plaintiffs to defendant; that the defendant corporation still holds the securities which the plaintiffs delivered to it; and that all of said facts appear on the books and records of said defendant. In other words they alleged in effect that there was merely an exchange in form but not in fact, and that the transaction was a mere change in the form of accounts between the plaintiffs and the corporate defendant. Manifestly if these allegations are true, and the defendants' motions admitted the truth thereof, it is clear the plaintiffs are and at all times have been *'investors'* in the defendant corporation."

Following this decision, there was a trial upon the merits. The trial court found that, in 1929, the association and the company launched a campaign for the purpose of obtaining investments of the one in exchange for the capital stock of the other. Permits were issued by the Corporation Commissioner for the sale of the company's stock but these were conditioned upon the requirements that each sale be for cash and that a copy of the permit be shown to each purchaser. The respondents would not have exchanged their investments in the association for capital stock of the company but for the false representations made by the agents of the company and the association. Each of the exchanges and conversions of investments for the capital stock was void because the stock was not issued or sold for cash and, for the further reason, that no copy of the permit for the sale of stock was exhibited to the investor. The court also found that the first cause of action is not barred by any statute of limitation nor are the respondents' rights barred by laches.

From these facts, the court concluded that the investors who are the respondents upon this appeal are entitled to a judgment decreeing the respective transfers made by them to be void, and restoring them to their respective status either as

the holder of a pass book investment certificate or as a mutual shareholder in the amount and as of the date of each exchange appearing upon the books of the association and the company. Each of those persons, the court continued, has established a valid claim, as such investor, against the appellants for the amount of his investment, the claim to be paid out of the special trust account and reserve fund of the association's assets established by the commissioner and in the due course of the administration of the liquidation proceedings by him. Judgment was entered accordingly.

The appellants now urge that as the facts found by the trial court clearly establish that the respondents did not appear upon the books of the association as investors at the time the commissioner took over the association and, under the applicable statute, only such investors are excused from filing claims, the trial court erred in rendering judgment for the respondents. But, in making this contention, say the respondents, the appellants are rearguing a question now res judicata by the decision upon the former appeal.

█ It is a rule of general application that all questions and issues adjudicated on a prior appeal are the law of the case upon all subsequent appeals and will not be reconsidered. (*Wells* v. *Lloyd,* 21 Cal.2d 452, 454-458 [132 P.2d 471]; *Blanton* v. *Curry,* 20 Cal.2d 793, 801; [129 P.2d 1]; *Gore* v. *Bingaman,* 20 Cal.2d 118, 121-123 [124 P.2d 17]; *Security-First Nat. Bank* v. *Marxen,* 19 Cal.2d 100 [119 P.2d 131]; *Clayton* v. *Schultz,* 18 Cal.2d 328 [115 P.2d 446]; *Penziner* v. *West American Finance Co.,* 10 Cal.2d 160 [74 P.2d 252].) **[2]** This doctrine applies to decisions of the District Courts of Appeal after they have become final. (*Wells* v. *Lloyd, supra,* p. 483; *Gore* v. *Bingaman, supra,* p. 122; *United Dredging Co.* v. *Industrial Acc. Com.,* 208 Cal. 705 [284 P. 922); *Otten* v. *Spreckels,* 183 Cal. 252 [191 P. 11]; *Hill* v. *Maryland Casualty Co.,* 28 Cal.App. 422 [152 P. 953].) And even when, upon the second appeal, a court is convinced that the prior decision of a question of law was erroneous, it will refuse to reexamine that issue in the absence of unusual circumstances leading to injustice or unfairness. (*Wells* v. *Lloyd, supra,* p. 484; *Gore* v. *Bingaman, supra,* p. 121; *Penziner* v. *West American Finance Co., supra; Hoffman* v. *Southern Pacific Co.,* 215 Cal. 454 [11 P.2d 387]; *Newport* v. *Hatton,* 207 Cal. 515 [279 P. 134]; *McEwen* v. *New York Life Ins. Co.,* 187

Cal. 144 [201 P. 577]; *Tally* v. *Ganahl*, 151 Cal. 418 [90 P. 1049]; see *England* v. *Hospital of Good Samaritan,* 14 Cal.2d 791, 795 [97 P.2d 813].)

Considering the decision of the District Court of Appeal for the purpose of determining the extent to which the law of the case controls a determination of the present controversy, it appears that upon the first appeal, as here, the association and the commissioner attacked the respondents' complaint as insufficient to state a cause of action. Since the respondents alleged that they had exchanged their interests in the association for shares of the capital stock in the company, said the appellants, they no longer appeared upon the books of the association as investors, and consequently their claims were, by the express provisions of section 13.16, of the Building and Loan Act, Stats. 1931, p. 483, as amended, Deering's Gen. Laws, Act 986, barred because of the failure to file the required claims with the commissioner. In ruling against this contention, the District Court of Appeal not only held that the complaint states a cause of action but that although they demand damages, "their complaint was answered and they may be awarded such relief as comes within the issues. (Sec. 580, Code Civ. Proc.) If they establish their claim as alleged, the trial court may find they are still the owners of their original certificates and, if so, they will then be entitled to present them to the defendant commissioner and share in subsequent dividends as provided in Act 986, *supra*. Section 13.16, paragraph 3, contains this sentence: 'Any investor, without presenting a claim, shall be entitled, as to any dividends *hereafter* declared, to share in such dividends to the extent, and in the proper relative order of priority, of any claim shown by the books of the association to exist in his favor against the association'." *(Allen* v. *California Mut. B. & L. Assn., supra*, p. 379.)

It is true, of course, that if the respondents' evidence does not prove the allegations of the complaint which was considered upon the former appeal, the doctrine of the law of the case does not apply. *(Archer* v. *City of Los Angeles,* 19 Cal.2d 19, 29 [119 P.2d 1].) And the appellants charge that although the findings of the trial court, in terms relate facts which the District Court of Appeal said were, in effect, pleaded by the respondents, they are not supported by the evidence.

It is not necessary to question the appellants' assertion that the withdrawals of the respondents' investments appeared by appropriate entries in the books of the association at the time the commissioner took over the association for the purpose of liquidation because the former decision clearly contemplates this situation. Under such circumstances, said the District Court of Appeal, if the respondents were defrauded, they are entitled to a decree declaring them still to be investors in the association, such restoration being effective as of the date of the exchange.

 And considering other evidence which is admitted by the appellants to be true, it is clear that the respondents have proved a case within the decision upon the prior appeal. Thus it is conceded that the company was organized to purchase the guarantee stock of the association then outstanding. In accordance with this plan, the association and the company fraudulently induced the respondents to agree to exchange their investments in the association for the capital stock of the company. To consummate the transaction, the respondents were induced to sign orders on the association for the withdrawal of their deposits. These they delivered to the stock salesmen together with their pass books. By appropriate entries the orders were subsequently credited to the purchase by the company of the guarantee stock of the association. And findings that the company did not receive any cash for the sale of its stock other than by means of the credits upon the purchase of the association's guarantee shares, or that the permits were not exhibited to the respondents as required by their terms, stand unquestioned.

 The District Court of Appeal concluded that an order sustaining an objection to the introduction of any evidence upon the ground that the complaint does not state a cause of action is, in effect, the same as one granting a nonsuit. This holding places an order which is based upon the construction of a pleading in the same category as one predicated upon an evaluation of evidence. But eliminating that procedural question from present consideration, the court held that those investors who, by reason of fraudulent representations, made transfers of their certificates, or amounts represented thereby, which appear upon the books of the association, continue to be "the owners of their original certificates." As such owners

they are entitled to share in subsequent dividends declared by the commissioner.

It is difficult to follow that reasoning. Until 1935, the Building and Loan Association Act, *supra,* provided that "the claim of any investor, appearing upon the books of the association to be a valid claim," might be presented later than those of creditors or investors generally. (Stats. 1933, p. 2719; Deering's Gen. Laws, 1933 Supp., Act 986, §13.16.) Effective September 15, 1935, "Any investor, without presenting a claim, shall be entitled, as to any dividends hereafter declared, to share in such dividends to the extent, and in the proper relative order of priority, of any claim shown by the books of the association to exist in his favor . . ." (Stats. 1935, p. 1500; Deering's Gen. Laws, 1935 Supp., Act 986, §13.16.) If the District Court of Appeal correctly construed the statute, a commissioner endeavoring to liquidate an association will encounter many practical difficulties. How may he know whether any particular person whose name appears on the books of the association as having been, at one time, an investor, assigned his certificate by reason of fraudulent representations, or in a transaction in which there was a failure of consideration, or under other circumstances which enables him to later attack the transfer? And how far back in time must the commissioner go in scrutinizing the record of transfers?

A fuller consideration of the question than could be given in connection with the petition for a hearing in this court of the prior appeal leads to the conclusion that the Legislature in 1935, and also by the prior enactment, intended to liberalize the statutory requirements for the filing of a claim in favor of one who, as admitted by the books of the association, was an investor of the institution at the time it was taken over by the commissioner. The purpose of a claim is to give the commissioner information concerning an indebtedness of the institution. If the books of the association show the indebtedness, said the Legislature, the investor should not be required to present a claim which duplicates the data on its own records. But to say that an investor whose withdrawal order or assignment of the certificate which evidenced his deposit of money has been recorded on the books of the association is still an investor according to those books, ignores the meaning of the statute and the obvious purpose of its enactment.

■ However, although the District Court of Appeal erroneously construed and applied these provisions of the Building and Loan Act, *supra,* the trial court's determination of the rights of the respondents, by following the law of the case, leads to no such result as is contemplated by the rule which allows an exception to that doctrine when an application of it would bring about an injustice. (See *England* v. *Hospital of Good Samaritan, supra,* p. 791.) On the merits, the respondents have the same rights to share in the proceeds of the liquidation as the plaintiffs in the Alexander case, who similarly exchanged investment certificates or mutual shares in the association for the capital stock of the company, and it appears that the commissioner has set aside an amount sufficient to pay their demands, on a pro rata basis, with those of the judgment creditors in the earlier litigation. Under these circumstances, as, by the law of the case, the evidence fully supports the judgment, the respondents are entitled to restoration to their respective interests as holders of investment certificates and as mutual shareholders in the association, and also to the dividends declared in the liquidation proceedings. *(Alexander* v. *State Capital Co., supra.)*

A second point which is urged as a ground for the reversal of the judgment is the trial court's ruling that the cause of action is not barred by the statute of limitations relied upon by the appellants, nor by laches. Assuming that the claim of each of the respondents appears upon the books of the company, say the appellants, that record shows him to be only a former investor, who, because of the alleged fraud, has a cause of action either for damages or for restoration to his former status as an investor. In either case, they insist, the gravamen of the action is fraud. And, as a stockholder, each respondent is charged with notice of what was spread upon the records of the company; therefore, his cause of action is barred by the provisions of subdivision 4 of' section 338 of the Code of Civil Procedure establishing a three year period of limitation for the commencement of an action for relief upon the ground of fraud.

■ As a general rule, all questions presented by the record must be raised upon the first appeal from an adverse ruling, as thereafter all matters within the scope of the action and relevant to the issues will be deemed to have been concluded by the judgment. Moreover, in any later considera-

tion of the controversy, it will be held that the judgment, by implication, if not directly, has determined all issues related to the subject matter and raised by proper pleadings. (*McCandless* v. *City of Los Angeles,* 10 Cal.App.2d 407, 413 [52 P.2d 545]; *Texas Co.* v. *Moynier,* 137 Cal.App. 112, 113 [29 P.2d 873]; 5 C.J.S., Appeal and Error, §1825, n. 7, p. 1279; and see *Sutphin* v. *Speik,* 15 Cal.2d 195, 202 [99 P.2d 652, 101 P.2d 497]; *Barrow* v. *Santa Monica B. Sup. Co.,* 9 Cal.2d 601, 606 [71 P.2d 1108]; *Andrews* v. *Reidy,* 7 Cal.2d 366, 370, 371 [60 P.2d 832]; *Lanktree* v. *Lanktree,* 6 Cal.2d 120, 122 [56 P.2d 943]; *Price* v. *Sixth District Agricultural Assn.,* 201 Cal. 502, 511-513 [258 P. 387].) ▉ The sufficiency of the second amended complaint, filed in February, 1936, was the substantial issue raised in the prior appeal. It charges that during the years 1929 to 1931 inclusive, by reason of the fraudulent representations of the association, the respondents exchanged their investments in it for stock of the State Capital Company. If it be assumed that the records of a corporation place its stockholders upon notice to the extent claimed by the appellants, the complaint does not state a cause of action but it is not now subject to attack.

Where it appears upon the face of the complaint that a cause of action is barred by the statute of limitations, and the statute is pleaded, a judgment may be rendered for the defendant if the case is submitted upon the pleadings. (*Wormouth* v. *Hatch,* 33 Cal. 121; 16 Cal.Jur., Limitation of Actions, § 212, p. 618.) The appellants, in their answer, have pleaded the provisions of section 338, subdivision 4 of the Code of Civil Procedure as barring the cause of action stated in the second amended complaint. If, therefore, the appellants' contention as to the notice given by the corporation's books is sound, the trial court properly entered judgment for them upon the pleadings. Implicit, therefore, in the order granting the respondents' motion for a new trial, which was affirmed upon appeal, is the holding that the cause of action is not barred by the statute of limitations. (*McCowen* v. *Pew,* 18 Cal.App. 302 [123 P. 191], *Reclamation Dist. No. 3* v. *Goldman,* 65 Cal. 635 [4 P. 676], and see 2 Cal.Jur., Appeal and Error, § 568, pp. 966, 967.)

▉ Another reason which is urged as a ground for the reversal of the judgment, is that the respondents were notified of the fraudulent misrepresentations upon the receipt in De-

cember, 1931, of certificates of stock of the State Capital Company. Immediately upon receiving a certificate of stock, say the appellants, those who claim to have acted upon the representations of the association were put on notice that they had no right to withdraw their money from the company, for any such preference would have to be stated in the stock certificate. This argument admits the absence from the stock certificate of any express language that a stockholder might withdraw his investment in the State Capital Company. But even if he could be charged with knowledge based upon the statutory requirements, as to form, of a stock certificate, the discovery of the falsity of the statement concerning a right to withdraw did not give him notice that other representations concerning the company were untrue.

Nor does the fact that, after no dividend was declared in December, 1931, some of the respondents admittedly endeavored to obtain from the company's officers the amount of their investments, or that some of them joined a stockholders' committee which employed an attorney to protect their interests, necessarily compel a holding that the statute of limitations commenced to run as of that date. For the record shows that the officers of the association and the company countered the complaints of the respondents with explanations based upon the then current economic depression and promises of prospective earnings. This and other testimony in the record adequately supports the finding of the trial court that the respondents continued to rely upon the good faith, wisdom, and advice of the officers and directors respecting the two corporations and did not learn that the stock was valueless until the adjudication in bankruptcy of the company in March, 1933, and the publication two months later by the commissioner of the notice to creditors of the association.

The appellants also rely upon the provision of section 348 of the Code of Civil Procedure that, when a building and loan association has become insolvent and is in the process of liquidation, "the statute of limitations shall be deemed to have commenced to run from the beginning of the process of liquidation." Since the Building and Loan Commissioner took over the assets of the California Building and Loan Association in January, 1933, they assert, this action, filed more than three years after that date, is barred by subdivision

4 of section 338 of the Code of Civil Procedure. But assuming, without deciding, that the process of liquidation, within the meaning of section 348, *supra,* commenced upon the date of the take-over by the commissioner, the appellants may not now raise the issue that the action is for that reason barred. For, the complaint shows the facts upon which the appellants' contention is based, and by their answer the statute now relied upon was pleaded as a defense. The issue was therefore before the trial court when it ruled upon the pleadings and is concluded by the affirmance of the order granting a new trial.

██ Concerning the equitable defense, it is well settled that delay alone does not constitute laches unless it is accompanied by circumstances from which prejudice may result. (*Alexander* v. *State Capital Co.,* 9 Cal.2d 304, 313 [70 P.2d 619], *Gibson* v. *Mitchell,* 9 Cal.2d 718, 725, 726 [72 P.2d 740], *Security T. & S. Bank* v. *Southern Pac. R. R. Co.,* 214 Cal. 81, 88 [3 P.2d 1015], *Wolpert* v. *Gripton,* 213 Cal. 474, 483 [2 P.2d 767], *Silver Burdett Co.* v. *State Board of Education,* 36 Cal.App.2d 714, 719 [98 P.2d 533].) Here, as was said in *Alexander* v. *State Capital Co., supra,* "There is no suggestion . . . that the lapse of time resulted in any injury to the Building and Loan Association, nor has it been made to appear that by reason of lapse of time it is inequitable to enforce the demands of the respondents." And the unchallenged finding of the trial court is that the commissioner has created a special trust and reserve fund for the purpose of paying the respondents' claims should they be declared valid by the court.

██ In 1935, the provision which allowed "the claim of any investor, appearing upon the books of the association to be a valid claim, presented after the expiration of the" statutory time, to share in any subsequently declared dividend, was relaxed to allow an investor, without filing a claim, to share in any dividend declared after the effective date of the amendment. The obvious purpose of the statute is to protect the investor whose creditor relation appears without contradiction upon the books of the association from losing his right to share in the liquidation of the insolvent organization's assets through negligence or inadvertance in failing to file a claim within the prescribed period. The use of the word "hereafter" expresses the legislative intention that the amendment should apply to dividends declared after September 15, 1935, its effective date, in the assets of associations then in the process

of liquidation. As the first dividend of the California Building and Loan Association was declared on December 2, 1935, although none of the respondents filed a claim, each of them is entitled to share in the first and all subsequent dividends.

But the appellants assert that, under the decision upon the prior appeal, the respondents are not entitled to share in any liquidating dividends declared prior to the judgment establishing their claims. In support of their contention, they refer to the concluding paragraph of the opinion, which reads: "As the action must go back to the trial court for further proceedings, it should be stated that we notice the use of the word 'hereafter' in the statute we have just quoted. It is evidently a misprint for 'thereafter.' Any other construction would lead to absurd results. To illustrate, let us assume that since September 1, 1935, dividends have been declared and paid as provided in Act 986, *supra*. The sentence we have quoted took effect on the date last mentioned. According to the meaning of said sentence as it is written, all sums so paid would have to be recalled, reapportioned, and these plaintiffs included. As stated above that would be an absurdity. Construing the word as *thereafter* instead of *hereafter*, the sentence has a reasonable meaning. Those who delay in presenting their claims lose their rights to participate in dividends theretofore declared and paid, but after their claims have been presented, as in said sentence provided, they are then entitled to the rights provided therein."

This discussion is obviously based upon the erroneous assumption that the presentation of a claim by the investor was still required under the 1935 amendment, and this in spite of the inclusion of the words "without presenting a claim" in the statute. And the doctrine of the law of the case does not require this court to follow an interpretation which is clearly obiter dictum. The statement of facts in the discussion, assumed for the purpose of illustrating the necessity of the court's construction of the statute, presupposed a situation where the commissioner paid out all of the liquidating dividends accruing subsequent to September 1, 1935, without establishing a reserve or trust account for the benefit of the investors who had not filed claims with him, and, consequently, to allow such investors to share in dividends already apportioned and paid in their entirety to the other creditors would have required the amounts paid to be recalled and

reapportioned. But upon trial, the court found that the commissioner had created a trust account, for the benefit of the respondents, and had placed in it a ratable amount of each of the dividends he had theretofore declared from the proceeds on liquidation.

After decreeing that the respondents be restored as holders of passbook investment certificates in the appellant association, the judgment orders that each of them recover the amount of such investment certificate account and for costs, "with interests provided by his, or her, or their, respective investment certificate to date of payment." The appellants assert that interest is only payable up to the time of insolvency.

When the Building and Loan Commissioner takes possession of the property, business and assets of a building and loan association which he deems to be in an insolvent or unsafe financial condition, his future action is not limited to the liquidation and distribution of its assets, but he may administer the affairs of the company so as to restore, if possible, its economic stability and then consent to the association's resumption of business upon conditions approved by him. (Stats. 1931, ch. 269, p. 540; Deering's Gen. Laws, Act 986, §13.11.) If the association is allowed to resume business as a going concern, it should assume its continuing obligation to pay interest upon the deposits of its investors, even as to the period during which its assets were in the temporary control of the commissioner. But, if instead of restoring the property, business and assets to the association, the commissioner determines to liquidate them, the right of the investors to interest should be subject to the usual equitable principle governing liquidation, namely, equality among creditors. In the absence of an express statutory provision upon the matter, an investor in a building and loan association in the process of liquidation by the commissioner is not entitled to the payment of interest on his claim after the commencement of the liquidation proceeding, where the assets are insufficient to pay the principal of all claims in full. (In re Pacific Coast Bldg.-Loan Assn., 15 Cal.2d 134, 147 [99 P.2d 251].) Under this rule, as the respondents alleged and the court found that the assets and property of the association upon liquidation will enable its creditors and investors to receive approximately 65 cents on each dollar

owed them, the determination concerning interest is erroneous.

The determination of the commissioner to liquidate an association, after taking possession of its property, business, and assets, is evidenced by the filing of an inventory of its assets and the publication of notice to all persons having claims against it, whether as creditors or investors or otherwise, to present them within a specified period. (Sec. 13.16.) But by stipulation of the parties, they have agreed that liquidation of the association commenced on January 23, 1933. Accordingly, the judgment is modified by striking therefrom the words "to date of payment" (par. 3) and inserting in lieu thereof "to January 23, 1933," and as so modified, the judgment is affirmed, respondents to recover costs upon appeal.

Gibson, C. J., Shenk, J., Curtis, J., and Carter, J., concurred.

TRAYNOR, J.—I dissent. The majority opinion concedes not only that plaintiffs failed to present a claim to the Building and Loan Commissioner pursuant to section 13.16 of the Building and Loan Association Act (Deering's Gen. Laws, Act 986) but that under a proper construction of the act they could not be regarded as investors excused from presenting claims since their claims did not appear on the books of the association. Plaintiffs are thus allowed to recover without complying with the statutory conditions to recovery. I do not agree that this paradox is compelled by the doctrine of the law of the case.

The first appeal in this action involved the sufficiency of the allegations of plaintiffs' second amended complaint. The present appeal involves the sufficiency of the evidence to support the findings and judgment. The opinion of the District Court of Appeal on the first appeal sets forth that paragraph III of the second amended complaint alleged that plaintiffs were investors within the meaning of section 13.16 of the Building and Loan Association Act (Deering's Gen. Laws, Act 986). It appears that defendants contended that there was an inconsistency between the specific allegation of paragraph X of the second amended complaint that plaintiffs exchanged their interests for shares of stock in the

State Capital Company, and the general allegations of paragraph III, and that the specific allegation was controlling. *(Little v. Union Oil Co.,* 73 Cal.App. 612 [238 P. 1066]; *Aitken v. Stewart,* 129 Cal.App. 38 [18 P.2d 988].) The court declared that this contention would be persuasive if there were no other facts involved. "But there are many other allegations. The plaintiffs alleged that by the fraudulent representations of the defendant corporation they were induced to exchange securities, issued by the defendant corporation, for securities of State Capital Company, an agent of said defendant; that such exchange was not based on any consideration moving from plaintiffs to defendant; that the defendant corporation still holds the securities which the plaintiffs delivered to it; *and that all of said facts appear on the books and records of said defendant.* [Italics added.] In other words they alleged in effect that there was merely an exchange in form but not in fact, and that the transaction was a mere change in form of accounts between the plaintiffs and the corporate defendant. Manifestly if these allegations are true, and the defendants' motions admitted the truth thereof, it is clear the plaintiffs are and at all times have been *'investors'* in the defendant corporation. We are unable to say, therefore, that the plaintiffs' complaint did not state facts sufficient to constitute a cause of action." (40 Cal. App.2d 374, 378-379 [104 P.2d 851].)

It is clear from the foregoing that the second amended complaint was held to state a cause of action not simply because of the alleged fraud, but because all the facts showing the fraud and showing the exchange to be without consideration and merely an exchange in form, appeared on the books and records of the defendant. This allegation that all such facts appeared on the books and records of defendant relates to the terms of section 13.16 that an investor need not present a claim with respect to "any claim shown by the books of the association to exist in his favor against the association." Nothing in the record, however, indicates that such facts appeared on defendant's books and records. The books of the defendant association showed that plaintiffs ceased to be certificate holders in the association between 1929 and 1931. The books of the State Capital Company showed that at about the same time plaintiffs became stockholders in that company. Plaintiffs do not state the nature of their action,

but whether it is an action for rescission, for damages, or to quiet title, the claims asserted did not appear upon the books and records of the association. They are therefore barred by the provisions of the Building and Loan Association Act relating to the presentation of claims in liquidation.

The majority opinion does not rest with its interpretation of the opinion of the District Court of Appeal but extends the doctrine of the law of the case to issues that were not considered in that opinion. In the present appeal defendants contend that plaintiffs' rights are barred by the statute of limitations. The majority opinion holds that since the availability of this defense was established by the pleadings, the District Court of Appeal determined that the statute was inapplicable by holding the pleadings sufficient even though that court did not mention the statute. It has long been settled in this state, however, that only issues considered in the earlier opinion become the law of the case. *(Trower* v. *City and County of San Francisco,* 157 Cal. 762, 765 [109 P. 617] ; *Tally* v. *Ganahl,* 151 Cal. 418, 421 [90 P. 1049] ; *Central Nat. Bank* v. *Peck,* 15 Cal.App.2d 512 [59 P.2d 599] ; see *Moore* v. *Trott,* 162 Cal. 268, 273 [122 P. 462] ; *Mattingly* v. *Pennie,* 105 Cal. 514 [39 P. 200, 45 Am. St. Rep. 87] ; *Cowell* v. *Snyder,* 171 Cal. 291, 297 [165 P. 920] ; *Klauber* v. *San Diego Street Car Co.,* 98 Cal. 105, 107 [32 P. 876].) With two exceptions, the cases relied upon in the majority opinion involved res judicata, and the rule announced in relation to that doctrine has no application to the doctrine of the law of the case. The first of the two cases not concerned with res judicata, *Texas Co.* v. *Moynier,* 137 Cal.App. 112 [29 P.2d 873], holds merely that when a judgment is reversed with directions, the trial court must follow the directions. In the second, *People* v. *Walton,* 10 Cal.App.2d 413 [51 P.2d 1117], the court disposed of a question on the merits, noting that the opinion on a previous appeal had reached the same result. The doctrine of res judicata does not require a court to decide a case on an erroneous basis, as the law of the case does, and is therefore not so narrowly applied. *(Allen* v. *Bryant,* 155 Cal. 256, 258 [100 P. 704] ; see *England* v. *Hospital of Good Samaritan,* 14 Cal.2d 791, 795 [97 P.2d 813] ; 2 Cal.Jur. 947.) It is designed to make a judgment the final determination of a lawsuit by precluding the parties from presenting the same cause anew even when they have additional arguments. The

decision that is the law of the case, however, is made in anticipation of further litigation, and is intended not as a final determination of the rights of the parties but as a guide upon retrial. It does not foreclose the consideration of new legal issues arising from changes in the evidence or pleadings *(Cowell* v. *Snyder, supra; Bayer* v. *Barrett,* 127 Cal.App. 305 [15 P.2d 801] ; 5 C.J.S. 1508; 2 Cal.Jur. 951), and there is no reason why it should foreclose the presentation of issues not previously considered.

Schauer, J., concurred.