[Civ. No. 13007. First Dist., Div. Two. June 25, 1946.]

WILLIAM R. BIAGGI, Respondent, v. FRANK W. SAWYER, Appellant.

Frank W. Sawyer, in pro. per., for Appellant.

Campbell, Hayes & Custer and Kevin R. Twohy for Respondent.

GOODELL, J.—The respondent, a lawyer practicing in San Jose, sued the appellant, a lawyer practicing in Los Angeles, for $15,000, alleging that sum to be the reasonable value of legal services rendered at the special instance and request of the appellant. A judgment for $3,769.63 was recovered, from which this appeal was taken.

A brief history of the underlying litigation wherein the services were rendered is as follows: On January 23, 1933, the Building and Loan Commissioner took over the California Mutual Building and Loan Association for the purpose of liquidation. The appellant handled certain litigation on behalf of investors in the association, including the Alexander case (9 Cal.2d 304 [70 P.2d 619]), and respondent, learning of this, wrote him on January 30, 1936, that he had clients named Gomes who were investors with a $2,500 claim against the association which he would gladly turn over to appellant "for attention on some fair and equitable basis." This was acceptable to appellant, and in an action filed by appellant in the superior court, Santa Clara County, in February, 1936, the Gomes claim was included. That action was entitled *"Mrs. W. A. Allen et al.* v. *California Mutual Building and*

*Loan Assn. et al.,"* on the plaintiffs' side of which there were several hundred of the association's investors who sued to establish their claims and to participate in the liquidation but who had not filed claims with the commissioner. When the case came on for trial and before any evidence was introduced a motion for judgment on the pleadings was made and granted on the ground that the complaint did not state a cause of action. A motion for new trial was made and granted. From the order granting the new trial an appeal was taken and the order was affirmed by this court (40 Cal.App.2d 374 [104 P.2d 851]). The case then went to trial on the merits and resulted in a judgment, entered on August 8, 1941, which established the claims of about 150 plaintiffs, aggregating about $222,700 (including the Gomes Claim of $2,500) and denied the claims of about 150 other claimants. Notice of appeal was filed on behalf of the association and a motion to terminate proceedings on appeal was made and denied. The appeal came before this court, and the judgment for the claimants was reversed primarily on the ground that they had not filed their claims with the commissioner before commencing suit. (129 P.2d 703.) A hearing was granted by the Supreme Court and the case was again argued there. That court affirmed the judgment on July 8, 1943 (22 Cal.2d 474 [139 P.2d 321]).

The plaintiff in the instant case sued for legal services rendered in the Allen case between August 21, 1942, and March 7, 1943, "in looking up law, preparing memorandum of points and authorities, and in counseling and advising the defendant" Sawyer in connection with the second appeal.

The appellant contends that respondent cannot sue on a *quantum meruit* because there was an express contract whereby respondent agreed to accept from appellant one-half of 30 per cent of the Gomes recovery. He contends, further, that respondent was paid more than said one-half of said 30 per cent by a check which he accepted, and that the cashing of such check constituted an accord and satisfaction. Next, he contends that respondent is estopped herein because "he omitted to notify defendant that he intended to charge for alleged additional services." Finally, he contends that the judgment is excessive.

The dealings between the parties opened on January 30, 1936, when respondent as already noted wrote appellant about the Gomes claim. Appellant's response was favorable and on

February 14, 1936, respondent wrote appellant authorizing the inclusion of the Gomes claim for $2,500 in the forthcoming suit and stating that "in the event of recovery the Gomes are willing to and will pay you 30% of the amount recovered." Respondent and appellant agreed that this 30 per cent contingent fee would be divided equally between themselves. While it was understood that appellant would control the litigation, it was also agreed that respondent would assist him to the extent of handling the presentation of all the evidence required to prove the Gomes claim. When the case came to trial that understanding was carried out; respondent conducted the examination of the Gomes witnesses and put in all the evidence on their part of the case (just as other lawyers did for their clients). Respondent thereby performed his part of the express contract. There is no conflict or dispute up to this point. The court found that this express contract had been made, but it also found that the services performed by respondent were not all performed as attorney for his Gomes clients, but that they "were to a large extent performed by plaintiff for all the plaintiffs in the said 'Allen Action' at defendant's request," and that there was no understanding that respondent's compensation "was to be limited to one half of the fee allocated" to the Gomes claim. This brings us to the second phase of the dealings between the parties.

The second phase opens after the entry of judgment in favor of the plaintiff-investors in the Allen case. Appellant sent to respondent moving papers on which appellant had added respondent's name to his own as counsel on a motion to terminate proceedings looking to an appeal, and in doing so he wrote, "I have added your name to mine as the attorneys for the plaintiffs in this motion. I trust you will not take off your name and that you will act with me in this matter." The same letter expressed the hope that respondent could attend to the motion without the necessity of appellant journeying to San Jose from Los Angeles, and this hope was realized, for respondent alone handled the motion. From the outset respondent felt the motion was not well taken, but appellant insisted on it being presented, and it was. One of the plaintiffs whom appellant had chosen to make a supporting affidavit declined to do so, and respondent finally got *his* client to come in from Milpitas to make it. The motion was denied, as respondent had predicted. In one of his letters

concerning the motion appellant said, ''I consider you a most careful attorney and would like you to stay on, but if that is not possible, or to your liking, then omit your name and proceed with my name appearing alone.'' This attitude is understandable. The respondent had his office in San Jose where he had practiced for many years. Appellant's office was in Los Angeles. San Jose was the place where the case was tried and it was near to San Francisco where the appeal would be heard. Appellant testified, in fact, that he was desirous of having an associate in San Jose. Respondent not only ''stayed on,'' but he left his name on the court papers, at which appellant expressed his pleasure.

When the second appeal in the Allen case came on for argument in this court appellant wrote respondent requesting him to be present. He made similar requests of all other attorneys who had turned in claims for their individual clients. Respondent was present in court but did not argue and his name does not appear on the briefs.

This court reversed the judgment in the Allen case on October 10, 1942 (129 P.2d 703), which reversal initiated another series of letters between appellant and respondent. The former expressed indecision whether to petition directly to the Supreme Court or first seek a rehearing, and requested of respondent ''your information on that question and also your desire. . . . Think it over and let me have your valued consideration.'' The following day appellant wrote respondent that he had decided upon the former procedure and said, ''I shall need your valued assistance in the preparation of this petition, . . . and there are a number of other good attorneys interested and would suggest that they all be asked to assist and especially to sign and appear of record as attorneys for the petitioners.'' After the petition for hearing was filed respondent, at appellant's instance, journeyed from San Jose to San Francisco to file a memorandum of supplemental points and authorities prepared by appellant and to confer with the clerk. The petition for hearing was granted.

Thereafter, appellant wrote respondent that the hearing would probably take place in March, 1943, and asked respondent to ''save this time on your calendar.'' When he learned the exact date he informed respondent and asked, ''May I have your assistance?'' He outlined the position he proposed to take, and concluded, ''Let me hear from you with some citations in support of my contention.'' Respondent

answered that he would be present and would "endeavor to prepare a memorandum of authorities," which he did, and sent it a few days later to appellant, who commented, "I am sure that it will be very helpful." Permission was obtained from the Supreme Court at the hearing to file this Biaggi memorandum as a supplement to the briefs which appellant Sawyer had filed.

At the hearing respondent Biaggi appeared and made an argument on the investor-claimants' side of that case. A minute order entered by the court shows that both "F. W. Sawyer and William R. Biaggi appeared for the respondents." The report of the case at 22 Cal.2d 474, 478 [139 P.2d 321], shows counsel for respondents as "Frank W. Sawyer and Wm. R. Biaggi." The Supreme Court affirmed the judgment on July 8, 1943. When appellant learned of the victory he immediately wrote thanking the respondent.

In response to numerous requests while the case was under submission and thereafter, respondent supplied information desired by the appellant and attended to numerous other commissions.

On November 17, 1943, respondent, at appellant's request, appeared at a hearing in San Jose in relation to the claims of certain mutual shareholders of the association, and assisted in resisting the petition then under consideration, although it had no relation whatever to the Gomes' claim. In fact it involved the opposition to the allowance to other attorneys of counsel fees in the same liquidation but in other litigation. It was at this hearing, according to the respondent, that a representative of the commissioner inquired how the checks for the attorneys' fees in the Allen suit should be made out and respondent stated that he had no objection to the checks being made directly to appellant; the latter then stated that "I'll take care of Mr. Biaggi's fees."

The appellant's position herein is made particularly clear by the following allegation in his affirmative defense: "Any and all service, if any performed by plaintiff, Biaggi, in said Allen action was performed by him as an attorney for his clients, Gomes, in the presentation of the facts and the law to the courts in support of said claim of his said clients Gomes, all as understood and agreed as herein alleged. . . ."

The trial judge, however, determined that the express contract did not contemplate the services later rendered by respondent on the appeal.

In *Roche* v. *Baldwin*, 135 Cal. 522 [65 P. 459, 67 P. 903], cited by appellant, the suit was on a *quantum meruit* but the proof showed an express contract that Baldwin and his associate could fix the attorney fee. There was a variance between pleading and proof. It is not in point. Nor are *Lavenson* v. *Wise*, 131 Cal. 396 [63 P. 622], *Reynolds* v. *Sorosis Fruit Co.*, 133 Cal. 625 [66 P. 21], or *Bechtel* v. *Chase*, 156 Cal. 707, 712 [106 P. 81], in point, for in the instant case the facts already summarized show that respondent's services on the appeal were wholly disconnected from the original contingent fee contract. The case at bar is squarely within the rule of *McKee* v. *Lynch*, 40 Cal.App.2d 216 [104 P.2d 675].

There were two distinct phases. The first had to do with the Gomes claim alone. It was fully performed on the respondent's part as soon as the Gomes claim was proved. Appellant says in his brief that this situation was one into which the parties just "drifted." Respondent did not "drift" nor did he force himself into the second phase of the Allen case, for it was the appellant who put respondent's name on the motion papers in the trial court and who was anxious to have him continue on as an attorney of record. Again, when the case was to be argued in this court appellant requested respondent to be, and he was, present, although he did not argue.

Further, after the case had been lost in this court appellant enlisted respondent's active help and advice on the petition for hearing before the Supreme Court; asked respondent to prepare authorities supplementing appellant's brief, and respondent did so; moved, in open court, (as only he could) the association of respondent with himself as attorney of record for the plaintiffs—all of them—and respondent's is the only name that appears with appellant's as attorney of record for the prevailing parties—all of them—in the Supreme Court.

It cannot be said that respondent was thus associated because he had turned in a mere $2,500 claim and was interested in seeing it established and protected. Numerous other lawyers had likewise turned in claims for their clients, aggregating, according to the judgment, $222,700, compared to which $2,500 is a mere "drop in the bucket." It was the appellant who, for reasons of his own, singled out and selected the respondent as his associate counsel, and it was the respondent who was called upon, after the judgment had been reversed, and the situation looked none too bright, to furnish further

authorities and to add his voice by arguing before the Supreme Court.

It was then and there that the opportunity was presented for the last time to argue the cause of the 150 plaintiffs in the Allen case in an endeavor to save and uphold the judgment for $222,700 which they had won in the trial court. This "last stand" was recognized by appellant in one of his many letters to respondent, wherein he said "We must win in the Supreme Court or not at all." The parties did not "drift" into this situation. The appellant definitely requested the respondent's services and thereby impliedly agreed to pay for them.

 Appellant contends that an accord and satisfaction was established by the following circumstances. The contract called for an equal division of the 30 per cent contingent fee on the Gomes claim. After the judgment had become final the commissioner sent out checks for the first liquidating dividend of 55 per cent, and on December 1, 1943, appellant wrote to respondent enclosing his check for $460.74, and pointing out that the Gomes claim was for $2,500, to which had been added $292.43 interest, making $2,792.43, 30 per cent of which was $837.72. Appellant stated that he had received the dividend of 55 per cent thereof, or $460.74, and that, "While it was understood that this fee was to be divided between us, I am waiving my part and paying you the full amount, $460.72, and my check herewith for that purpose. I hope that this may be satisfactory to you. Edwards' division with me is 40 cents to him and 60 cents to me, but he did very little and you helped a whole lot and for which I greatly appreciate." The cashing of this check is relied on as showing an accord and satisfaction under sections 1521 and 1523, Civil Code.

Appellant cites *Johnston* v. *Burnett,* 17 Cal.App. 497-501 [120 P. 436], *Robertson* v. *Robertson,* 34 Cal.App.2d 113 [93 P.2d 175], and *Hardy* v. *Hardy* (Cal.App.), 135 P.2d 615. In the Johnston case the letter enclosing the check read, "Which check is given in full settlement of all matters between us," and the payee, with this letter before him, cashed the check. In the Robertson case the checks sent each month by the husband to the wife bore the words, "In full payment to [date]." In each case the court held that there was an accord and satisfaction. In the Hardy case the Supreme Court granted a hearing and in its decision (23 Cal.2d 244 [143 P.2d 701]), the question of accord and satisfaction is not discussed.

The check for $460.74, dated December 1, 1943, drawn by F. W. Sawyer on his Los Angeles bank, payable to William R. Biaggi, was introduced in evidence. On its face is type-written, "In Full Allen Action." This check came, of course, from the possession of appellant. The record shows the following testimony as having been first given by appellant: "That the words 'in full Allen action' were put on the check by defendant with his own typewriter at the time the check was drawn; that he was sure that the words were put on there at that time."

This testimony brought the case squarely within *Johnston* v. *Burnett, supra,* and *Robertson, supra,* relied on by appellant. But respondent produced an employee of the San Jose bank where the check was cashed, who testified that the bank photographed out-of-town checks, and who produced a photograph of this check taken *as it had gone through the bank,* with the words "In full Allen action" conspicuous by their absence. He was corroborated by respondent's secretary, as well as by respondent himself, who testified that no such words were on the check when he received it.

The record shows that after being confronted with the photograph the "defendant later testified that after looking at the photograph of the check, . . . it refreshes my recollection to this extent, I am not ready to say, or urge, that those words you mention were on the check at the time the check was drawn. It may have been they were put on the check as an office memorandum after the check got back to my file . . . I am not urging it as a part of the defense here. I don't know why I testified, I am not asking any court to pass upon that question."

The appellant while thus receding from his original position still adheres to the contention that there was an accord and satisfaction. What he said in the letter which enclosed the check has been already quoted. It must be remembered that respondent in any event was clearly entitled to half of $460.72, (or $230.36) also, that $460.72 was not the whole 30 per cent (which would be $837.72) but only 55 per cent of $837.72, leaving the remaining 45 per cent, or $376.97, still unpaid. Appellant did not say how he intended to deal with respondent's share of the remaining 45 per cent whenever it was paid. The letter is not clear and unequivocal *even on that score.*

*Johnston* v. *Burnett, supra,* makes it clear (p. 501)

that it must appear "in express terms" that the payment is intended as full satisfaction of the disputed account. It cites *Weller* v. *Stevens,* 12 Cal.App. 779 [108 P. 532], holding that there must be a *definite indication* either on the check or in the accompanying letter that it is intended as full payment of a disputed claim. In the latter case it was held that no existing dispute had been shown. *Messer* v. *Tait's Inc.,* 121 Cal.App. 698, 700 [9 P.2d 536], holds that there must be an "explicit statement" or an "explicit understanding."

There is nothing definite or explicit about appellant's letter of December 1, 1943. At most it is equivocal.

Finally, no dispute existed at that time, for not a word had then been said between the parties as to respondent's compensation for services after judgment and on appeal. This is borne out by the statement found in appellant's brief that "At that time Sawyer had not been notified, or informed, by Biaggi that he, Biaggi, had the mental reservation that he, Biaggi was going to charge anything more than as fixed by the original contract." In *Lapp-Gifford Co.* v. *Muscoy Water Co.,* 166 Cal. 25, 27 [134 P. 989], the court says, "Whether there was a dispute concerning the amount due and whether the tender was on condition that acceptance would be in full satisfaction, are primarily questions of fact for the trial court." In the case at bar the court found "that it is not true that on December 1st, 1943, or at any other time, plaintiff accepted the sum of $460.72 in full payment of said services . . .," and we are satisfied that such finding is amply supported and that there was no accord and satisfaction.

The appellant claims that because respondent commenced the performance of his services under a contract fixing his fees and "omitted to notify defendant that he intended to charge for alleged additional services" respondent is estopped from prosecuting this action. (Code Civ. Proc., § 1962, subd. 3.) From what has been said we think it clear that there were two distinct phases to the relations of these parties. Respondent was not called on to do anything on the first appeal. But he was requested to render services on the second, as already appears—services for the benefit of *all* the plaintiffs. Appellant cites respondent's testimony as follows: "I did not state to Mr. Sawyer at that time nor at any time before the final judgment from the Supreme Court that I intended and was going to charge him a fee for this work. He always told me to go ahead and do the work." We do not see how

respondent was under any duty to tell appellant that he intended to charge for legal services which were wholly beyond the scope of the original express contract. ■ The rule is, of course, that when one employs another he impliedly agrees to pay him whatever his services are reasonably worth. ■ The record in this case is full of requests from appellant to respondent. It certainly was not incumbent on respondent to tell appellant—a lawyer of many years' experience—that he expected to be paid for what he did. Moreover, appellant recognized an obligation to pay respondent something over and above the original one-half of 30 per cent when he sent respondent $230 more than that contract called for. This the appellant explains by saying that his purpose was to make "an equitable adjustment of a situation that we drifted into."

■ Lastly, appellant contends that the judgment for $4,000 (less the $230.37 credited) was excessive. The rule is stated in 3 Cal.Jur. 718 as follows: "Where the trial court has fixed the compensation of an attorney upon the consideration of the evidence and its own judgment, the appellate court will not interfere unless a plain and palpable abuse of its dis-, cretion has occurred." (See, also, *Crocker* v. *Crocker First National Bank*, 60 Cal.App.2d 725 [141 P.2d 482] ; *Mayock* v. *Splane*, 56 Cal.App.2d 563, 573 [132 P.2d 827].)

■ The amount at stake on the Allen appeal, in which the respondent was called upon to assist, was upwards of $222,000. Appellant testified that he did not know how much he had received in fees in that litigation—that he paid no attention to fees received in litigation, but that he considered his services reasonably worth between $40,000 and $50,000. Respondent testified that appellant had received approximately $45,000 as attorneys fees in the litigation.

While the second appeal was pending numerous letters were exchanged between the parties. Respondent's claim, however, is really based, as we have seen, on "looking up law, preparing memorandum of points and authorities, and in counseling and advising the defendant in connection with the appeal" in this court, on petition for hearing by the Supreme Court and "in preparing to argue and in arguing" before the Supreme Court.

The appellant characterizes the respondent's services as follows: "He appeared twice in the appellate courts, performing such services as might have been performed by an

'errand boy' following instructions and not exercising any responsibility whatsoever.''

It is not disputed that appellant sought and respondent gave his advice and counsel to respondent on this second appeal. It is not disputed that he prepared to argue, and did argue, before the Supreme Court, and it is an admitted fact that he prepared and filed in the Supreme Court a memorandum supplementing appellant's brief therein, on the question of the statute of limitations and laches.

This court on the present record has no way of telling what weight the respondent's argument and memorandum might have had, or what value should be attached to them, either by themselves or when compared and weighed with the argument and brief of the appellant before the same tribunal. There is no way of telling how persuasive respondent's presentation was. In the very nature of things that cannot now be determined. We do know, however, from an examination of the report in 22 Cal.2d 474 [139 P.2d 321], that the statute of limitations and laches played an important part in that decision. It is a matter of record that respondent did not brief or argue the case when it was presented and submitted to this court—where the decision was adverse—but that he did argue and did file a memorandum of authorities when the case was presented to the Supreme Court—where the decision was favorable.

The trial court has found that the reasonable value of respondent's services was $4,000. We cannot say that, in arriving at that figure, there was any abuse of discretion (3 Cal. Jur. 718, *supra*).

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 22, 1946.